1

2   LAW OFFICES OF ANDREW M . WYATT
    20750 Ventura Boulevard, Suite 440
    Woodland Hills, California 91364
4   Telephone:   (818) 710-3813
    Facsimile:    (818) 710-1938
5   ANDREW M. WYATT, State Bar No. 158759

6

7   Attorney for Plaintiff,
    MICHAEL KRONK

8

**FILED**

2010 MAR -1  AM 11: 45

CLERK U.S DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY_____

9

10                     UNITED STATES DISTRICT COURT

11          CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

12

**SACV10-00242  CJC MLGx**

13  MICHAEL KRONK, on behalf of himself )   CASE NO.
    and all others similarly situated,              )
14                                                  )   **CLASS ACTION COMPLAINT**
                                                    )
15              Plaintiff,                          )   1.   **VIOLATION OF SECURITIES**
        vs.                                         )        **ACT OF 1933 AND THE**
16                                                  )        **SECURITIES EXCHANGE ACT**
                                                    )        **OF 1934 (§§10(B),14(A),20(A))**
17  LANDWIN GROUP, LLC, SYLVIA,        )   2.   **VIOLATION OF RACKETEER**
    INC., SMITHDENNISON CAPITAL,       )        **INFLUENCED AND CORRUPT**
18  LLC, JACK R. ANDREW AND            )        **ORGANIZATIONS ACT (18 U.S.C.**
    ASSOCIATES, LLC,  NHB FAMILY       )        **1962)**
19  PARTNERS, LLC, CPP PROPERTIES,     )   3.   **UNTRUE OR MISLEADING**
    LLC, MUIR, LLC,  MARSHALL          )        **ADVERTISING (BUS. & PROF.**
20  REDDICK REALTY, INC., MARSHALL )        **CODE SECTION 17500)**
    REDDICK SEMINARS,                  )   4.   **COMMISSION OF UNLAWFUL,**
21  INC.,COMMERCIAL REAL ESTATE        )        **UNFAIR, AND FRAUDULENT**
    PROPERTIES, LLC,  MARSHALL         )        **BUSINESS ACTS AND**
22  REDDICK COMMERCIAL REAL            )        **PRACTICES (BUS. & PROF.**
    ESTATE NETWORKS, INC., SEAN        )        **CODE SECTION 17200)**
23  DENNISON, MARTIN LANDIS, JACK )   5.   **NEGLIGENT REFERRAL**
    ANDREWS, NORMAN BANGERTER,         )   6.   **NEGLIGENT**
24  TOM CASAULT, CHRIS PARNASS,        )        **MISREPRESENTATION**
    MARSHALL REDDICK, and DOES 1       )   7.   **INTENTIONAL**
25  through 100, Inclusive,            )        **MISREPRESENTATION**
                                       )   8.   **DECEIT/CONCEALMENT**
26              Defendants.            )   9.   **BREACH OF FIDUCIARY DUTY**
                                       )   10.  **UNJUST ENRICHMENT/**
27                                     )        **RESTITUTION/ACCOUNTING**
                                       )   11.  **NEGLIGENT INTERFERENCE**
28                                     )        **W/ PROSPECTIVE ADVANTAGE**
                                       )   12.  **INTENTIONAL INTERFERENCE**
                                       )        **W/ PROSPECTIVE ADVANTAGE**
                                       )
    _____)   **DEMAND FOR JURY TRIAL**

Plaintiff, by his attorney, make the following allegations for this Class Action Complaint and Jury Demand. The allegations with respect to Plaintiff's own acts are based upon knowledge. Other allegations are based upon facts obtained through the investigations undertaken by Plaintiff's attorney. Plaintiff believes that further substantial evidentiary support will exist for their allegations after a reasonable opportunity for discovery, especially in view of the fact that much of the evidence supporting the allegations contained herein is within the exclusive control of Defendants.

Plaintiff, MICHAEL KRONK, alleges as follows:

## NATURE OF THE ACTION

1.     Plaintiff brings this action as a class action for VIOLATION OF THE SECURITIES ACT OF 1933 AND THE SECURITIES EXCHANGE ACT OF 1934 (§§ 10(B), 14(A), AND 20(A));  VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT (18 U.S.C. 1962); UNTRUE OR MISLEADING ADVERTISING (BUS. & PROF. CODE SECTION 17500); COMMISSION OF UNLAWFUL, UNFAIR, AND FRAUDULENT BUSINESS ACTS AND PRACTICES (BUS. & PROF. CODE SECTION 17200); NEGLIGENT REFERRAL; NEGLIGENT MISREPRESENTATION; INTENTIONAL MISREPRESENTATION; DECEIT; CONCEALMENT; BREACH OF FIDUCIARY DUTY; UNJUST ENRICHMENT; NEGLIGENT INTERFERENCE WITH PROSPECTIVE ADVANTAGE; and  INTENTIONAL INTERFERENCE WITH PROSPECTIVE ADVANTAGE.

2.     This is a shareholder's derivative action brought for the benefit of nominal defendant LANDWIN MANAGEMENT, LLC. ("LM" or the "Company") against certain members of its Board of Directors (the "Board") and certain of its executive officers seeking to remedy defendants' breaches of fiduciary duties, unjust enrichment, statutory violations, and other violations of law.

3.     In sum, in gross breach of their fiduciary duties as officers and/or directors of Landwin Management, LLC, the Individual Defendants colluded with one another to:

a. improperly overcompensate themselves with salaries and benefits when the company was not making any money;

b. improperly use company assets to personally benefit themselves when there was no direct benefit to Landwin Management, LLC;

c. improperly characterized the business opportunity and valuation of the goodwill, paying $5.8 million to Martin Landis; and

d. make false representations that the 10 year profit was in excess of 400% and that the investor would earn over 30% per year when in fact the company was not profitable.

4. As a result of the Individual Defendants' egregious misconduct, Landwin Management, LLC,  has sustained millions of dollars in damages, and the recipients of the funds have garnered millions of dollars in unlawful profits.

## PARTIES

5.     Plaintiff, MICHAEL KRONK [hereinafter "Plaintiff"), is an individual who is and was at all times mentioned herein individuals, residing in the State of California in the County of Orange.

6.     Plaintiff is informed and believes, and thereon alleges, that at all times mentioned herein, Defendant LANDWIN GROUP, LLC, a California limited liability company, formed by SMITHDENNISON CAPITAL, LLC, MARSHALL REDDICK, TOM CASAULT, JACK R. ANDREWS AND ASSOCIATES, LLC, and SYLVIA, INC., is and was at all times mentioned herein doing business in the State of California, County of Los Angeles. Defendants (collectively, the "Individual Control Person Defendants") were during the Class Period controlling persons of Landwin Management, LLC, within the meaning of Section 15 of the Securities Act and 6 Section 20(a) of the Exchange Act.

CLASS ACTION COMPLAINT

7.     Plaintiff is informed and believes, and thereon alleges, that at all times mentioned herein, Defendant SMITHDENNISON CAPITAL, LLC, manager of Landwin Management, LLC, and as partner in LANDWIN GROUP, LLC, is and was at all times mentioned herein doing business in the State of California, County of Los Angeles.

8.     Plaintiff is informed and believes, and thereon alleges, that at all times mentioned herein, Defendant SYLVIA, INC., manager of Landwin Management, LLC, and as partner in LANDWIN GROUP, LLC, is and was at all times mentioned herein doing business in the State of California, County of Los Angeles.

9     Plaintiff is informed and believes, and thereon alleges, that at all times mentioned herein, Defendant SEAN DENNISON, an individual and president of SMITHDENNISON CAPITAL, LLC, as partner in LANDWIN GROUP, LLC and manager of Landwin Management, LLC, is and was at all times mentioned herein doing business in the State of California, County of Los Angeles.

10.    Plaintiff is informed and believes, and thereon alleges, that at all times mentioned herein, Defendant MARTIN LANDIS, an individual and president of SYLVIA, INC., as partner in LANDWIN GROUP, LLC and manager of Landwin Management, LLC, is and was at all times mentioned herein doing business in the State of California, County of Los Angeles.

11.    Plaintiff is informed and believes, and thereon alleges, that at all times mentioned herein, Defendant JACK ANDREWS, an individual and president of JACK R. ANDREWS AND ASSOCIATES, LLC, as partner in LANDWIN GROUP, LLC, is and was at all times mentioned herein doing business in the State of California, County of Los Angeles.

12     Plaintiff is informed and believes, and thereon alleges, that at all times mentioned herein, Defendant NORMAN BANGERTER,, an individual and president of NHB FAMILY PARTNERS, LLC, as advisor to LANDWIN GROUP, LLC, is and was at all times mentioned herein doing business in the State of California, County of Los

CLASS ACTION COMPLAINT

Angeles.

13    Plaintiff is informed and believes, and thereon alleges, that at all times mentioned herein, Defendant TOM CASAULT,, an individual and president of MUIR, LLC, as partner in LANDWIN GROUP, LLC, is and was at all times mentioned herein doing business in the State of California, County of Los Angeles.

14.   Plaintiff is informed and believes, and thereon alleges, that at all times mentioned herein, Defendant CHRIS PARNASS,, an individual and president of CPP PROPERTIES, LLC, as advisor to LANDWIN GROUP, LLC, is and was at all times mentioned herein doing business in the State of California, County of Los Angeles.

15.   Plaintiff is informed and believes, and thereon alleges, that at all times mentioned herein, Defendant MARSHALL REDDICK REALTY, INC., a California Corporation, is and was at all times mentioned herein a California Corporation, licensed as a real estate broker corporation doing business in the State of California, County of Los Angeles.

16.   Plaintiff is informed and believes, and thereon alleges, that at all times mentioned herein, Defendant MARSHALL REDDICK SEMINARS, INC., a California Corporation, is and was at all times mentioned herein a California Corporation, conducted real estate seminars in the State of California, County of Los Angeles.

17.   Plaintiff is informed and believes, and thereon alleges, that at all times mentioned herein, Defendant  MARSHALL REDDICK, [hereinafter "REDDICK"], is and was at all times mentioned herein an individual and president of COMMERCIAL REAL ESTATE PROPERTIES, LLC, as partner in LANDWIN GROUP, LLC, residing in the State of California and doing business as a licensed real estate broker in County of Los Angeles.

18.   Plaintiff is informed and believes, and thereon alleges, that at all times mentioned herein, Defendant MARSHALL REDDICK COMMERCIAL REAL ESTATE NETWORKS, INC., a California Corporation, is and was at all times mentioned herein a California Corporation, licensed as a real estate broker corporation

doing business in the State of California, County of Los Angeles.

19   At all times mentioned herein, Defendants, and each of them, were the agents and employees of each of the Defendants, and were at all times acting within the course and scope of said agency and employment, and each Defendant has ratified and approved the acts of his agent.

20.   That the true names and/or capacities, whether individual, corporate, associate, governmental or otherwise of Defendants Does 1 through 100, inclusive, are unknown to Plaintiff, who therefore sues said Defendants by such fictitious names. Each of the Defendants designated herein as a Doe is negligently or otherwise legally responsible in some manner for the events and happenings herein referred to and thereby proximately caused injuries and damages to the plaintiff as herein alleged. Plaintiff will ask leave of the Court to amend this complaint to show the true names and capacities of said DOES when the same have been ascertained.

21.   Plaintiff is informed and believes and thereon alleges that each of the fictitiously named defendants are responsible in some manner for the occurrences alleged in this Complaint and the losses suffered by Plaintiff, and that Plaintiff's damages as alleged in this Complaint were proximately caused by their conduct.

22.   Plaintiff is informed and believes and thereon alleges that at all times relevant to this action, the Defendants and Does 1 through 100, inclusive, and each of them, were the agents, representatives, partners and/or employees of one another, and in doing the things hereinafter alleged, were acting within the course and scope of such authority and employment and with the permission and consent of the Defendants. Plaintiff is further informed and believes and thereon alleges that all actions of each Defendant was ratified by each other Defendant.

## FACTUAL ALLEGATIONS

23.   According to its website, Landwin was " [o]riginally established by Martin Landis in 1986 as a boutique serving the interests of close 'family and friend' individual investors, the business was transformed in 2003 through the equal partnership

of Mr. Landis with Co-Managing Principal, Seán Dennison, created for the purpose of combining the capabilities, resources and expansive relationship networks of the principals and their key partners to grow Landwin's business incrementally leveraging a truly superb prior performance record for the benefit of an expanding base of U.S. and international high net worth individual as well as institutional investor clients."

24.     The website further states that "Currently, approximately 4,000,000 combined square feet of superbly-located Western U.S. value-added retail, office and mixed-use assets are under management with an approximate current market value of over $500,000,000. In addition, Landwin sources a continually-renewing, multi-billion dollar forward project pipeline of diverse, off-market and first-look, U.S. real estate projects attracting a new generation of U.S. and international investor clientele."

25.     The website makes claims that "The 'Landwin System' is a proven, proprietary, codified and copyrighted process encompassing every aspect of the real estate investment, development and management business. Based on a fundamentally 'contrarian' investment philosophy, the System is built on a deceptively simple set of 'rules' including, for example, Rule #1: **'Never Lose What You Have,'** Rule #2: 'Always Outpace Inflation,' and Rule #3: 'You Make Your Money When You Buy.' (Emphasis added).

26.     The website boasts that "Landwin's **prior performance record speaks for itself** as the best testament to the proven soundness of our contrarian investment philosophy and power of our proprietary system.  Disciplined adherence to our process, and a unique emphasis on creativity as a competitive advantage, particularly in structuring win-win relationships, difficult deals, and problem-solving, have enabled us to **produce a truly exceptional overall performance**." (Emphasis added).

27.     In the latter part of 2003, Defendants SMITHDENNISON CAPITAL, LLC, and JACK R. ANDREWS & ASSOCIATES, LLC, approached Defendant MARSHALL REDDICK to sell commercial real estate opportunities to the Marshall Reddick Real Estate Network members. As a result of the association with Marshall

Reddick, LANDWIN GROUP, LLC, was formed as partnership between Martin Landis, Sean Dennison, Jack Andrews, Marshall Reddick and Tom Casault.

28.     On February 1, 2005, a private investment offering was made to the network members for ownership in Landwin Management, LLC, a new management company which purchased all of Landwin's "successful" commercial real estate management business.

29.     On August 15, 2005, the offering was closed and Landwin raised approximately $13,800,000 from 211 network members who acquired approximately 58% of the ownership interest in Landwin Management, LLC.

30.     The remaining 42% interest in Landwin Management, LLC was retained by Landwin Group, LLC for 199 units at a fixed price of $50,000 per share or $9,950,000.

31.     According to the private placement memorandum, "[u]pon the Initial Closing, the Company will have acquired the Asset Management Business and the Other Contributed Assets for $5,800,000 in cash from the proceeds of the Offering to be paid to Sylvia for the goodwill, equipment, and furnishings of the Asset Management Business." It further states that "[t]he Asset Management Business includes **certain specific assets of Sylvia**, and **all goodwill assets of its affiliate, Landwin**, including but not limited to, **existing cash flow streams derived from certain fees payable to Sylvia** under currently existing Management and Leasing Service Agreements ('MLSAs') between Sylvia, functioning as the property manager (the 'Property Manager' or 'PM'), and each owner of one of the real property assets under management of Sylvia." (Emphasis added).

32.     As compensation to defendants SYLVIA, INC. and SMITHDENNISON, LLC, as managers of Landwin Management, LLC, each get the following compensation package:

"(a)     **a guaranteed management fee payable in semi-monthly installments of $11,291.67,** increasing by the greater of 5% per year or the Consumer Price Index for the state of California , and subject to further increases

approved by Members holding a majority of the Units (each a 'Management Fee');

(b) **a closing fee equal to 1% of the gross proceeds of any closing,** including the Initial Closing, Final Closing, and any Subsequent Closing, resulting in total Offering closing fees of **up to $300,000,** but with **not less than $100,000** payable at the Initial Closing (each, a 'Closing Fee');

(c) a **retention fee of .25% of equity assets then under management** (other than with respect to the real properties subject to the existing MLSAs or any real property acquired in exchange for any other real property) for each full year of service after the first 60 months (each, a 'Retention Fee');

(d) **severance in the amount of one year's Management Fee** upon termination of the Management Agreement as provided therein;

(e) **reimbursement of insurance and medical expenses of up to $30,000 per year;** and

(f) **reimbursement of all costs** incurred in connection with the performance of duties, with **interest at the rate of 10% per year until paid.**"

(Emphasis added).

33.    For at least four years, a majority of Landwin Management, LLC's (hereinafter "LM") managers, together with its top officers, engaged in a secret scheme to deplete the assets of LM by paying to themselves and others high fees and salaries when the company was not making money as a business. LANDWIN GROUP, LLC, SYLVIA, INC., SMITHDENNISON CAPITAL, LLC, SEAN DENNISON, and MARTIN LANDIS (hereinafter "Managers") are the managers of LM and responsible for its day to day operation.

34.    To entice investors to purchase shares of the company, defendants inflated the value of the company to investors, thereby raising over $13.8 million from 211 investors on representations that the investors would receive a 429.56% return on

their investment over a 10 year period.

35.     In addition, to lure investors to contribute, in all of its advertisements, the managers made claims that "**For 20 years now**, Landwin has delivered among the highest returns in the U.S. with **Over 30% IRR per year,** and "No Investor Has EVER Lost Money in any Landwin Investment!" (Emphasis in original). The Landwin website still to this day shows a January 31, 2008, press release which claims "For **over two decades**, Landwin has **preserved an exceptional prior performance record** of delivering **over 30% per year overall average returns** while **no investor** has **ever lost money** in **any Landwin investment**." (Emphasis added). This is simply not the case.

36.     Of the initial $13.8 million, Martin Landis and his company, Sylvia, Inc. received a payout of $5.8 million for the "goodwill" of the company. Mr. Landis purchased a $5 million home in Malibu, California with the proceeds.

37.     At closing, other fees including finder fees of $690,000, closing fee and marketing expense of $322,708, legal fees of $9,515, accounting fees of $172,604, and engineering fees of $22,934 for a total of $1,217,761 were paid out. The finders fees went to Marshall Reddick and Tom Casault among others.

38.     After deducting $7 million from the investment, there was $6.8 million left for the development of the business.

39.     On July 28, 2006, the managers sent out an email stating "Landwin Management CLOSES multi-million dollar investment. **The 211 Marshall Reddick Network Members** who last year (2005) invested to become **owners in our asset management company,** Landwin Management, LLC, had **$2,000,000 of their invested capital placed** this week in an investment **delivering a guaranteed 30% return over the next 12 months.** Details of the investment are available to 'the 211.'" Not only were the investors not informed of this investment, but the 211 investors did not receive anything, let alone  a 30% return over the next 12 months.

40.     From August 2005 until January, 1, 2009, the $6.8 million was squandered and used up by the managers by paying themselves each semi-monthly fees of

$11,291.67 with a 5% yearly escalation factor, a closing fee of 1% up to $300,000 but not less than $100,000, a retention fee of 0.25% of assets under management, a severance fee of 1 year of management fee, reimbursement of insurance and medical expenses up to $30,000, and a work week of 3 days a week with 6 weeks of vacation. According to a memorandum dated December 19, 2008, what is left of the $13.8 million is "**$1,400,000 in capital remaining, with liabilities of approximately $900,000 to $1,100,000.**" (Emphasis added).  According to its tax returns, LM earned $237,868 in 2005, $621,588 in 20006 and $664,406 in 2007.  According to the Business Valuation Report dated October 31, 2008, it states that "[a]t the present time, following a property disposition in early 2008, there are **just 6 properties being managed by Landwin** with **a current revenue stream of approximately $25,000 per month**. This **cannot support the current operations** needed to manage the properties. A budget prepared by management for the periods following October 31, 2008 shows a **monthly burn rate of approximately $120,000 per month. . . .** At **October 31, 2008** Landwin had **net cash of approximately $1.8 million**. In addition Landwin had **fixed assets with a net book value of approximately $150,000 for a combined net book value of approximately $1.95 million**, most of which was fully liquid. This was **further reduced in November** by the **cash flow deficit of $205,852.**" (Emphasis added).

41.     According to its website, Landwin claims that it still delivers "exceptional returns," "prior performance record speaks for itself," "the 'Landwin' name synonymous with the highest standards of integrity . . ." In fact, the website makes Landwin appear as a very profitable and successful business. The reality of the situation is that Landwin depleted the assets of the Landwin Management, LLC for its own purposes of traveling all over the world to bring business to itself and not for the benefit of the 211 investors. On July 5, 2007, Landwin sent out the following email to the network investors: "As Albert Einstein once said, *"Creativity is more important than knowledge."* For over 21 Years now, *LANDWIN* has continuously demonstrated the power of creativity as its unique competitive advantage. Any "armchair" investor can

buy property and benefit <u>IF</u> the market appreciates. LANDWIN's principals teach that it is hazardous to "bank on market appreciation." Instead, LANDWIN believes that <u>SUPERIOR CREATIVE TALENT CREATES VALUE FOR INVESTORS.</u> LANDWIN's 30% PER YEAR HISTORICAL RESULTS speak for themselves, and as a member of our Network, YOU CAN NOW SHARE IN THE BENEFITS of: <u>1)</u> <u>SAFETY</u> (In Our Network, Only LANDWIN Has Never Lost Member's Money); 2)TAX-SHELTERED MONTHLY <u>INCOME</u> (In Our Network, Only LANDWIN Buys <u>ONLY</u> Positive Cash Flow; 3) TAX-FREE <u>RETURN of CAPITAL</u> (In Our Network, Only LANDWIN "Creates Value" thru Management); 4) TAX-SHELTERED <u>PROFITS</u> (In Our Network, Only LANDWIN Has <u>30% Per Year</u> Returns). Emphasis in original.

42.    On February 4, 2008, Tom Casault, sent out this email stating that "Though I Have Not Been Associated with the Residential Network Organization for Over a Year Now, YOU are Still a Member of the Network I Helped Build for Many Years. You are Part of the Family I Introduced to LANDWIN <u>After</u> I Made a $1,000,000 Investment of My Own with LANDWIN. Now that the Market Has Finally Corrected, and LANDWIN, as a *"CONTRARIAN INVESTOR"* is Perfectly Positioned to Begin Buying Again, I Have Never Been More Excited About My Investment with LANDWIN, and Its Ability to Deliver Exceptional Returns. YOU Should NOT Miss Out On the Extraordinary Opportunity to BENEFIT from LANDWIN'S Proven 22-Year Record of Delivering 30% Per Year Overall Average Returns to Investors."

43.    On March 1, 2008, the managers sent out a letter to the investors stating that "[i]t is critically important to understand that you, the other Members, **the Managers and their good partners, Jack Andrews and Tom Casault , are all in this company together**. All of us have been **severely and irreparably harmed by Reddick**, and even with litigation against them, **Reddick still persists in harming us all**."(emphasis added).

44.    The managers introduced a new "business plan" where if the investors did not provide new capital, then the managers would go to outside sources thereby

resulting in a dilution of the value of the member's share and a reduction in the percentage interest in the company.

45. The managers also disclosed for the first time that they were able to recover money lent to Defendant Reddick on an ill-fated project in Hawaii. The second strategy was "**Establish an Institutional Pedigree**: Once the Managers were able to recover the $2,000,000 loan principal from Reddick related to the Ilikai Hotel condo-conversion development project in Hawaii in July , 2007, their attention was able to be focused on developing the Company's new business plan and, as part of that, replacing the Network as the source of investment capital for programs to be managed by the Company." (Emphasis in original).

46. The managers never disclosed to the investors at the time of purchase that the sole source for increased growth was dependent on the Network. This is a material omission which would have affected the decision to make the investment.

47. To add insult to injury, the only deal made by the Managers was for their own benefit. They stated that "[e]ach of the two **Managers** are **entitled to transact one project independently of the Company**, as per their **Management Agreements**. However, for this project, the Managers have decided to **share 50% of the fee and profit-sharing income generated in this project for its manager with the Company. The Managers will share equally the other 50%**. In doing this, the **Managers have the right to transact additional projects this calendar year and share them with the Company until the equivalent of one full project has been transacted by each of the Managers in 2008.** Despite the fact that the Company is practically out of money, the Managers "cherry-picked" the best projects for themselves. This was written into their contract they gave themselves. Based on their statement, the managers could do another 3 projects where they can keep 50% of the income for themselves and then 41% of the income as managers of Landwin Management, LLC.

48. On September 26, 2008, the Managers sent out another letter to the investors regarding "URGENT VOTE OF THE MEMBERS OF THE COMPANY." In

this letter it disclosed that none of the members contributed in the March 2008 Capital Call. First, the Managers again blamed Reddick for their woes. Then they blamed the economy. Never once did they assume any responsibility for their own actions or lack thereof. Now to keep the company afloat, there were three options proposed: 1) by contributing an additional $2,000,000 (or $9390 per member) the company can stay solvent without any outside financing; 2) get some or all financed by an outside lender resulting in a reduction of equity in the company by 70%; or 3) do nothing and run out of money and go out of business. The members had to decide by October 10, 2008.

49.     On May 13, 2009, the Managers sent out an email stating "Our CPA has notified all IRA custodians that the **estimated value of a unit of limited liability company membership interest in Landwin Management, LLC** (each a "Unit"), which was **originally purchased for a minimum of $50,000**, is **worth** as of **April 30, 2009, only $382.**" (Emphasis added). This is from a company that still claims it returns of 30% per year and that no investor has ever lost money.

50.     On November 12, 2009, Landwin Management LLC was bought out by Sylvia Inc. – owned by Martin Landis and SmithDennison Capital LLC – owned by Sean Dennison with no monetary considerations given back to the investors. Sean Dennison received $500,000 to step down as Manager and Martin Landis received 51% of the Company, thereby leaving the investors 49% with no compensation, therby further diluting the value of their shares. Martin Landis and Sean Dennison, the managers made a decision to close down Landwin Management LLC just after they looted the investors' funds in this company. This company is being replaced by "Broad Beach Advisors LLC" which is solely owned by Martin Landis and Sean Dennison and this is formed to manage Partners Fund I and II and other Funds. Broad Beach Advisors LLC is a Delaware corporation filed by Sean Dennison at the California Secretary of State on February 18, 2009. Despite being bought out of Landwin Management, LLC, Sean Dennison continues to participate in all other Landwin

investments as Martin Landis's partner.

## PLAINTIFF MICHAEL KRONK'S PURCHASE OF 1 UNIT

51.   In August, 2005, Plaintiff, Michael Kronk, a member of the Marshall Reddick Real Estate Network, found out about Landwin Management, LLC through presentations made by defendants SEAN DENNISON and CHRIS PARNASS at the Reddick seminars.

52.   Plaintiff invested $50,000 for one share of Landwin Management, LLC. He purchased through Landwin based on their promises through newsletters, emails, presentations, phone conversations with defendants SEAN DENNISON and CHRIS PARNASS and through seminars, where he was told that this investments was projected to produce a 40% per-year cash-on-cash return to investors and Landwin's 21-year track record speaks for itself: No Investor has ever Lost Money and Landwin's Returns far Exceed 31% per year.

53.   Plaintiff has never received any distributions in 4 years from his Landwin Management LLC investment .

54.   In the 2007 K-1 it stated that Plaintiff lost $4,057 for the year. In the 2008 K-1 it stated that Plaintiff lost $4,290. It also stated that Plaintiff still have $40,232 capital account.

55.   According to the documents received by Plaintiff, the salary paid to Martin Landis – Sylvia Inc from investors funds as a manager (none of which were disclosed to investors):

   a.  2005 - $295,132.29 – from Landwin Management LLC
   b.  2006 - $338,750.10 – from Landwin Management LLC
   c.  2007 - $271,000.08 - from Landwin Management LLC

**Total salary for 3 years: $904,882.47**

Salary paid to Sean Dennison – SmithDennison Capital LLC from investors funds as a manager (none of which were disclosed to investors):

        d.  2005 - $263,674.31 – from Landwin Management LLC

        e.  2006 - $278.250.08 - from Landwin Management LLC

        f.  2007 - $295,241.86 - from Landwin Management LLC

**Total salary for 3 years: $837,166.25**

56.  Based on Plaintiff's investigation, it appears that Landwin is representing itself to the outside world as a very successful enterprise while at the same time it is crying poverty to the Reddick investors who were foolish enough to believe their claims. Not only has Landwin not given Plaintiff and other 210 investors a return on their money, they are not returning the money to the investors. Instead the investors are going to receive less than 1¢ on the dollar or $382.00 on a $50,000 investment.

## MARSHALL REDDICK'S BREACH OF CONTRACT AND LANDWIN LAWSUIT AGAINST HIM AND HIS ENTITIES

57.  On March 17, 2006, Defendant MARSHALL REDDICK entered into a contract with Defendant LANDWIN GROUP, LLC, for the purpose of giving Landwin Group the exclusive referral of all prospective investors for commercial real estate investment opportunities to Landwin.Group. Defendant MARSHALL REDDICK is a partner of Defendant LANDWIN GROUP, INC, and received a portion of the $690,000 finder's fee.

58.  According to the lawsuit filed by Landwin against Reddick, Los Angeles Superior Court Case number BC378287, paragraph 12,  it is alleged that "Defendant Marshall Reddick Commercial Real Estate Network, Inc., is an entity formed by Marshall Reddick on September 20, 2007, which Plaintiffs believe was created to divert funds and avoid the consequences of the suit herein."

59.   The lawsuit at paragraph 25 states that the Reddick Defendants "were secretly themselves using the network member's data, as well as making the network and data available to third parties for solicitation of multiple commercial real estate investments. The Defendants knew they had acted in contradiction to their representation. After discovery of the misrepresentation by the Plaintiffs in January 2007, these Defendants were confronted by the true facts of their action. The Defendants acknowledged their breach and misrepresentation. But they then misrepresented that such conduct had ceased. Even while the Plaintiffs worked in good faith to provide the Defendants every reasonable opportunity to desist, and preserve the business relationship for the benefit of the network members, the Defendant continued to breach in multiple occasions during February and March, 2007. It is now believed that they never intended to follow through on any of the representations they had made. Finally on April 5, 2007, the Landwin Group gave written notice of breach and demanded that Marshall Reddick cease and desist."

60.   According to the complaint, in paragraph 33 it states that Landwin Management, LLC has "lost significant, multi-million dollar income from fees and profit-sharing rights to which they are entitled from Landwin REIT, as that public REIT's 'asset manager' . . ." and "has suffered additional loss of fee and profit-sharing income due to the inability of Landwin Partner's Find II, LLC, to raise capital from network members as a result of the Defendant's ongoing misconduct."

**DEFENDANT TOM CASAULT AND HIS COMPANY MUIR, LLC**

61.   According to the Landwin website it states that "Introduced to Landwin by Sean Dennison, Tom Casault is Manager of Muir, LLC (Muir), a Long Beach, CA-based commercial real estate asset holding and consulting company engaged by Landwin."

62.   Tom Casault is a partner in Defendant LANDWIN GROUP, LLC, and was an active participant in the operations of Landwin Management, LLC. Defendant TOM CASAULT received a portion of the $690,000 finder's fee.

63.   On February 4, 2008, Tom Casault, sent out this email stating that "Though

1

2  I Have Not Been Associated with the Residential Network Organization for Over a Year

4  Now, YOU are Still a Member of the Network I Helped Build for Many Years. You are

5  Part of the Family I Introduced to LANDWIN <u>After</u> I Made a $1,000,000 Investment of

6  My Own with LANDWIN. Now that the Market Has Finally Corrected, and LANDWIN,

7  as a *"CONTRARIAN INVESTOR"* is Perfectly Positioned to Begin Buying Again, I Have

8  Never Been More Excited About My Investment with LANDWIN, and Its Ability to

9  Deliver Exceptional Returns. **YOU Should NOT Miss Out On the Extraordinary**

10 **Opportunity to BENEFIT from LANDWIN'S Proven 22-Year Record of Delivering**

11 **30% Per Year Overall Average Returns to Investors.**" Defendant TOM CASAULT

12 made these representations to Plaintiff and others similarly situated to him knowing that

13 these statements were false because by February, 2008, Plaintiff had already lost value in

14 his initial investment. Despite these gross misrepresentations, Landwin Management,

15 LLC, was losing money every year due to the mismanagement of Defendant TOM

16 CASAULT, his entity as a Landwin consultant, and his other LANDWIN GROUP, LLC

17 partners.

## CHRIS PARNASS AND HIS COMPANY, CPP PROPERTIES, LLC

18

19      64.   According to the Landwin website, it states that "Introduced to Landwin by

20 Sean Dennison, Chris Parnass is CEO of CPP Properties, LLC (CPP), a San Pedro, CA-

21 based commercial real estate development management consulting firm engaged by

22 Landwin Management, LLC, to source, acquire and manage development joint ventures

23 under Landwin's "Master Manager" JV partnership model." Defendant CHRIS

24 PARNASS conducted seminars, of which in 2007 Plaintiff was a participant, wherein

25 PARNASS made a presentation on other Landwin investments unrelated to the Landwin

26 Management, LLC.  Even though PARNASS was selling other non-related investments,

27 his consulting fees were being paid by Landwin Management, LLC.

28      65.   On May 5, 2008, Defendant CHRIS PARNASS filed a class action lawsuit,

entitled, *Chris Parnass v. UBS AG,* et al, Case No. BC390220, in the Superior Court of

the State of California, County of Los Angeles, brought under state law on behalf of "all

persons and entities who provided funds for the account named Landwin Management, from which Plaintiffs purchased and now hold auction rate securities."

66. In that lawsuit, in paragraph 5, Defendant CHRIS PARNASS as Plaintiff alleges that the "members of the Class are 211 or greater in number." In paragraph 3, PARNASS further alleges that "monies provided to Defendant by Landwin Management"and originally invested in "liquid `Federal Funds'" were "later reinvested ... in auction rate securities, some of which were underwritten and sold by UBS." He also alleges in paragraph 6(c)that "statements made by Defendants to the investing public misrepresented or omitted material facts about the liquidity risks associated with auction rate securities and the market for such securities, and pursued market manipulation intended to create a false appearance of active trading of such securities...." In paragraphs 12 and 35, PARNASS alleges that Defendants misrepresented to investors that "auction rate securities were the same as cash and were highly liquid, safe investments for short-term investing. In paragraphs 14, 15, 35, 40.1, PARNASS further alleges that Defendants failed to disclose that auction rate securities 1) "were not cash alternatives," 2)"were only liquid at the time of sale because UBS and other brokerdealers in the auction market were artificially supporting and manipulating the market to maintain an appearance of liquidity and stability", and 3) "were not short-term investments ... and that the short-term nature of the securities and the ability of investors to quickly convert their auction rate securities into cash depended entirely on the perpetuation of the artificial auction market."

67. Defendant CHRIS PARNASS acted as the lead plaintiff on behalf of the other members of the Landwin Management, LLC, yet did not disclose to the other members that a class action was filed on their behalf. It was clearly a conflict for Defendant CHRIS PARNASS to be the lead plaintiff on behalf of the other non-Landwin members because he was clearly part of the management team. This was not disclosed in the lawsuit.

68. Defendants LANDWIN GROUP, LLC, SYLVIA, INC., SMITHDENNISON CAPITAL, LLC, failed to disclose to the members of Landwin Management, LLC, that

they invested over $2,000,000 of their money in a risky investment. Defendants failed to notify the members of the problems with the investment and that they chose Defendant CHRIS PARNASS to be the lead plaintiff.

69.    Neither Defendants CHRIS PARNASS, LANDWIN GROUP, LLC, SYLVIA, INC., SMITHDENNISON CAPITAL, LLC, informed the members of the Landwin Management, LLC, that a settlement was achieved wherein a settlement of over $2,000,000 was paid to CHRIS PARNASS.

70.    To this day, Plaintiff knows nothing about the settlement, whether Defendant CHRIS PARNASS kept all or a portion of the proceeds, whether Defendants LANDWIN GROUP, LLC, SYLVIA, INC., SMITHDENNISON CAPITAL, LLC,  kept it for themselves or returned it to Landwin Management As with everything else there was no transparency and a secrecy when it came to use of the money.

## NORMAN BANGERTER AND NHB FAMILY PARTNERS, LLC

71.    According to the Landwin website "Introduced to Landwin by long-time partners, Sean Dennison and Jack Andrews, Mr. Bangerter is the former two-term Governor of the State of Utah, and Manager of NHB Family Partners, LLC (NHB), a South Jordan, UT-based real estate asset holding company and an advisor to the "Landwin" companies."

72.   Defendant NORM BANGERTER and his company NHB FAMILY PARTNERS, LLC,  is an advisory  partner of Defendant LANDWIN GROUP, LLC, and Landwin Management, LLC.

73.   Defendant BANGERTER served as an advisor to both LANDWIN GROUP, LLC. and Landwin Management, LLC.

74.   Plaintiff is informed and believes and thereon alleges that Defendant BANGERTER, as advisor, was personally consulted and gave advice  in each of the decisions, and acted as a co-conspirator in defrauding the network investors of their $13,800,000 investment.

## JACK R. ANDREWS AND HIS COMPANY, JACK R. ANDREWS AND

**ASSOCIATES, LLC**

75. According the Landwin website, "Introduced to Landwin by long-time partner, Sean Dennison, Mr. Andrews is manager of Jack R. Andrews & Associates, LLC (JRA), a Salt Lake City, UT-based residential real estate investment, development, marketing, sales and management company and an advisor to the 'Landwin' companies."

76. Defendant JACK ANDREWS, and his company, JACK R. ANDREWS AND ASSOCIATES, LLC, is an advisory partner in LANDWIN GROUP, LLC, and Landwin Management, LLC.

77. Defendant JACK ANDREWS served as an advisor to both LANDWIN GROUP, LLC. and Landwin Management, LLC. In the latter part of 2003, Defendants SMITHDENNISON CAPITAL, LLC, and JACK R. ANDREWS & ASSOCIATES, LLC, approached Defendant MARSHALL REDDICK to sell commercial real estate opportunities to the Marshall Reddick Real Estate Network members. Defendant JACK ANDREWS received a portion of the $690,000 finder's fee.

78. Plaintiff is informed and believes and thereon alleges that Defendant JACK ANDREWS , as advisor, was personally consulted and gave advice  in each of the decisions, and acted as a co-conspirator in defrauding the network investors of their $13,800,000 investment.

**DUTIES OF THE INDIVIDUAL DEFENDANTS**

79. By reason of their positions as officers and/or directors of the Company and because of their ability to control the business and corporate affairs of the Company, the Individual Defendants owed the Company and its shareholders the fiduciary obligations of good faith, trust, loyalty, and due care, and were and are required to use their utmost ability to control and manage the Company in a fair, just, honest, and equitable manner. The Individual Defendants were and are required to act in furtherance of the best interests of the Company and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit. Each director and officer of the Company owes to the Company and its shareholders the fiduciary duty to exercise good

faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing.

80. The Individual Defendants, because of their positions of control and authority as directors and/or officers of the Company, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein.

81. To discharge their duties, the officers and directors of the Company were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the Company. By virtue of such duties, the officers and directors of the Company were required to, among other things:

a. exercise good faith in ensuring that the affairs of the Company were conducted in an efficient, business-like manner so as to make it possible to provide the highest quality performance of its business;

b. exercise good faith in ensuring that the Company was operated in a diligent, honest and prudent manner and complied with all applicable federal and state laws, rules, regulations and requirements, including acting only within the scope of its legal authority;

c. exercise good faith in supervising the preparation, filing and/or dissemination of financial statements, press releases, audits, reports or other information required by law, and in examining and evaluating any reports or examinations, audits, or other financial information concerning the financial condition of the Company;

d. exercise good faith in ensuring that the Company's financial statements were prepared in accordance with Generally Accepted Accounting Principles ("GAAP"); and

e. refrain from unduly benefitting themselves and other Company insiders at the expense of the Company.

82. The Individual Defendants, particularly the members of the managers, were responsible for maintaining and establishing adequate internal accounting controls for the Company and to ensure that the Company's financial statements were based on accurate financial information. According to GAAP, to accomplish the objectives of accurately

recording, processing, summarizing, and reporting financial data, a corporation must establish an internal accounting control structure.

Among other things, the Individual Defendants were required to:

(1) make and keep books, records, and accounts, which, in reasonable detail, accurately and fairly reflect the transactions and dispositions of the assets of the Company; and (2) devise and maintain a system of internal accounting controls sufficient to provide reasonable assurances that –

(a) transactions are executed in accordance with management's general or specific authorization;

(b) transactions are recorded as necessary to permit preparation of financial statements in conformity with [GAAP].

## JURISDICTION AND VENUE

84.    This Court has jurisdiction over the subject matter of this action pursuant to Section 22 of the Securities Act (15 U.S.C. § 77v), Section 27 of the Exchange Act (15 U.S.C. § 78aa), 28 U.S.C. § 1331, and under the Class Action Fairness Act of 2005, which, inter alia, amends 28 U.S.C. § 1332 to add a new subsection (d) conferring federal jurisdiction over class actions where, as here, "any member of a class is a citizen of a State different from any other Defendant," and the aggregated amount in controversy exceeds five million dollars ($5,000,000). *See* 28 U.S.C. § 1332(d)(2), (6). This Court has federal subject matter jurisdiction of the RICO claim as a federal question pursuant to 28 U.S.C. §§ 1331 and 18 U.S.C. §1964(c) (civil remedies for RICO violations); This Court has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. § 1367(a). This action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have.

85. This Court has personal jurisdiction over the parties because Plaintiff submits to the jurisdiction of the Court that Defendants conduct substantial business within the District and are licensed insurers under the Arizona Insurance code. Further, Defendants' conduct giving rise to the complaint occurred, in part, in this district and Defendants maintain offices in this district.

86. Venue is proper in this district under 28 U.S.C. § 1391 and 18 U.S.C. § 1965 because some of the actions alleged in this complaint occurred, in substantial part, in this district. Specifically, preparation and/or dissemination of materially false and misleading statements and omissions and deceptive sales tactics occurred in this district. In addition, one or more Defendants either reside or maintain offices in this district; some of the transactions complained of herein occurred in this district; and statements of material fact that were deceptive and misleading or that omitted to state material facts necessary in order to make the statements made, in light of the circumstances in which they were made, not misleading, were made in this district; and the investment that is at issue in this case are advertised, marketed, and sold in this district. Venue is proper in this district because a substantial portion of the transactions and wrongs complained of herein, including the defendants' primary participation in the wrongful acts detailed herein, occurred in this district. One or more of the defendants either resides in or maintains executive offices in this district, and defendants have received substantial compensation in this district by engaging in numerous activities and conducting business here, which had an effect in this district.

87. Defendants, directly or indirectly, used the means and instrumentalities of

1

2  interstate commerce, including the mails and interstate telephone and data

4  communications in connection with the acts and conduct alleged herein.

5

6

7

**CLASS ACTION ALLEGATIONS**

8      88.  Plaintiff bring this action as a class action pursuant to Rule 23 of the

9  Federal Rules of Civil Procedure, on behalf of themselves and a Class consisting of:

10  All persons who purchased at least one unit of Landwin Management, LLC between the

11
12  period of February 1, 2005 and August 15, 2005. Excluded from the Class are Defendants,

13  the other officers and directors of the corporate 4 defendants, and the members of those persons'

14  immediate families, any entity in which any defendant has a controlling interest, and the

15  legal affiliates, heirs, controlling persons, agents, successors and predecessors in interest

16
17  or assigns of any such excluded person or entity.

18      89.  This action is properly maintainable as a class action because:

19      a.  The Class is so numerous that joinder of all members is impracticable. While

20  the exact number of Class members is unknown to Plaintiffs at this time but less than

21
22  211, persons who purchased Defendants' Landwin Management, LLC, units Class

23  members may be identified from the records maintained by Defendants and/or their

24  agents, and Class members may be notified of the pendency of this action using a form

25
26  of notice and dissemination methods similar to those customarily used in other class

27  actions.

28      b.  Plaintiff's claims are typical of the claims of the other members of the Class.

Plaintiffs and all members of the Class purchased and/or acquired their units in Landwin

Management, LLC, in reliance upon Defendants' statements to the public and sustained damages as a result of Defendants' wrongful conduct complained of herein.

c.   Plaintiff is a representative party who will fairly and adequately protect the interests of the other members of the Class and has retained counsel competent and experienced in class action securities litigation.

d.   A class action is superior to other available methods for the fair and efficient adjudication of the claims asserted herein because joinder of all members is impracticable. Furthermore, because the damages suffered by each individual Class member may be relatively small, the expense and burden of individual litigation make it impracticable for Class members to individually redress the wrongs done to them.

e.   Plaintiff anticipates no unusual difficulties in the management of this action as a class action.

90.   There are common questions of law and fact that predominate over any questions affecting any individual members of the Class.

91.   The questions of law and fact that are common to Plaintiffs and the Class include, among others:

a.   whether the federal securities laws were violated by Defendants' acts and omissions as alleged herein;

b.   whether Defendants and their agents sold securities during the Class Period by means of standardized, untrue and/or misleading statements of material fact or by means of standardized omissions of material fact necessary to make the statements made, in light of the circumstances in which they were made, not misleading;

c.   whether Defendants and their agents acted in concert or engaged as  principal and agent in the making of materially false and misleading statements in connection with the sale of units in the Landwin Management, LLC;

d.   whether, with respect to claims alleged under the Exchange Act, Defendants and/or their agents acted with knowledge or with reckless disregard for the truth in omitting to state and/or misrepresenting material facts;

e.   whether Defendants LANDWIN GROUP, LLC, SMITHDENNISON CAPITAL, LLC, MARSHALL REDDICK, TOM CASAULT, JACK R. ANDREWS AND ASSOCIATES, LLC, and SYLVIA, INC. were controlling persons of Landwin Management, LLC, agents under Section 20(a) of the Exchange Act;

f.   whether the Individual Control Persons Defendants were controlling persons of Landwin Management, LLC,  within the meaning of Section 15 of the Securities Act and Section 20(a) of the Exchange Act;

g.   whether Defendants LANDWIN GROUP, LLC, SMITHDENNISON CAPITAL, LLC, MARSHALL REDDICK, TOM CASAULT, JACK R. ANDREWS AND ASSOCIATES, LLC, and SYLVIA, INC. were controlling persons of Landwin Management, LLC,  within the  meaning of Section 20(a) of the Exchange Act;

h.   whether punitive damages should be awarded;

i.   whether Plaintiffs and the Class have been damaged or are entitled to restitution or reformation as a result of the misrepresentations and omissions and course of conduct described herein, and, if so, the appropriate measure of damages in this action.

## DEFENDANTS' WRONGFUL COURSE OF CONDUCT

92.     For at least four years, a majority of Landwin Management, LLC's (hereinafter "LM") managers, together with its top officers, engaged in a secret scheme to deplete the assets of LM by paying to themselves and others high fees and salaries when the company was not making money as a business. LANDWIN GROUP, LLC, SYLVIA, INC., SMITHDENNISON CAPITAL, LLC, SEAN DENNISON, and MARTIN LANDIS (hereinafter "Managers") are the managers of LM and responsible for its day to day operation.

93.     To entice investors to purchase shares of the company, defendants inflated the value of the company to investors, thereby raising over $13.8 million from 211 investors on representations that the investors would receive a 429.56% return on their investment over a 10 year period.

95.     In addition, to lure investors to contribute, in all of its advertisements, the managers made claims that "**For 20 years now,** Landwin has delivered among the highest returns in the U.S. with **Over 30% IRR per year,** and "No Investor Has EVER Lost Money in any Landwin Investment!" (Emphasis in original). The Landwin website still to this day shows a January 31, 2008, press release which claims "For **over two decades,** Landwin has **preserved an exceptional prior performance record** of delivering **over 30% per year overall average returns** while **no investor** has **ever lost money** in **any Landwin investment**." (Emphasis added). This is simply not the case.

96.     Of the initial $13.8 million, Martin Landis and his company, Sylvia, Inc. received a payout of $5.8 million for the "goodwill" of the company. Mr. Landis

purchased a $5 million home in Malibu, California with the proceeds.

97.     At closing, other fees including finder fees of $690,000, closing fee and marketing expense of $322,708, legal fees of $9,515, accounting fees of $172,604, and engineering fees of $22,934 for a total of $1,217,761 were paid out. The finders fees went to Marshall Reddick and Tom Casault among others.

98.     After deducting $7 million from the investment, there was $6.8 million left for the development of the business.

99.     On July 28, 2006, the managers sent out an email stating "Landwin Management CLOSES multi-million dollar investment. **The 211 Marshall Reddick Network Members** who last year (2005) invested to become **owners in our asset management company**, Landwin Management, LLC, had **$2,000,000 of their invested capital placed** this week in an investment **delivering a guaranteed 30% return over the next 12 months**. Details of the investment are available to 'the 211.'" Not only were the investors not informed of this investment, but the 211 investors did not receive anything, let alone a 30% return over the next 12 months.

100.    From August 2005 until January, 1, 2009, the $6.8 million was squandered and used up by the managers by paying themselves each semi-monthly fees of $11,291.67 with a 5% yearly escalation factor, a closing fee of 1% up to $300,000 but not less than $100,000, a retention fee of 0.25% of assets under management, a severance fee of 1 year of management fee, reimbursement of insurance and medical expenses up to $30,000, and a work week of 3 days a week with 6 weeks of vacation. According to a

memorandum dated December 19, 2008, what is left of the $13.8 million is "**$1,400,000 in capital remaining, with liabilities of approximately $900,000 to $1,100,000.**" (Emphasis added).  According to its tax returns, LM earned $237,868 in 2005, $621,588 in 20006 and $664,406 in 2007.  According to the Business Valuation Report dated October 31, 2008, it states that "[a]t the present time, following a property disposition in early 2008, there are **just 6 properties being managed by Landwin** with a **current revenue stream of approximately $25,000 per month**. This **cannot support the current operations** needed to manage the properties. A budget prepared by management for the periods following October 31, 2008 shows a **monthly burn rate of approximately $120,000 per month. . . .** At **October 31, 2008** Landwin had **net cash of approximately $1.8 million**. In addition Landwin had **fixed assets with a net book value of approximately $150,000 for a combined net book value of approximately $1.95 million,** most of which was fully liquid. This was **further reduced in November** by the **cash flow deficit of $205,852.**" (Emphasis added).

101.    According to its website, Landwin claims that it still delivers "exceptional returns," "prior performance record speaks for itself," "the 'Landwin' name synonymous with the highest standards of integrity . . ." In fact, the website makes Landwin appear as a very profitable and successful business. The reality of the situation is that Landwin depleted the assets of the Landwin Management, LLC for its own purposes of traveling all over the world to bring business to itself and not for the benefit of the 211 investors.

102.     The lawsuit by Landwin against Reddick at paragraph 25 states that the Reddick Defendants "were secretly themselves using the network member's data, as well as making the network and data available to third parties for solicitation of multiple commercial real estate investments. The Defendants knew they had acted in contradiction to their representation. After discovery of the misrepresentation by the Plaintiffs in January 2007, these Defendants were confronted by the true facts of their action. The Defendants acknowledged their breach and misrepresentation. But they then misrepresented that such conduct had ceased. Even while the Plaintiffs worked in good faith to provide the Defendants every reasonable opportunity to desist, and preserve the business relationship for the benefit of the network members, the Defendant continued to breach in multiple occasions during February and March, 2007. It is now believed that they never intended to follow through on any of the representations they had made. Finally on April 5, 2007, the Landwin Group gave written notice of breach and demanded that Marshall Reddick cease and desist."

103.     According to the complaint, in paragraph 33 it states that Landwin Management, LLC has "lost significant, multi-million dollar income from fees and profit-sharing rights to which they are entitled from Landwin REIT, as that public REIT's 'asset manager' . . ." and "has suffered additional loss of fee and profit-sharing income due to the inability of Landwin Partner's Find II, LLC, to raise capital from network members as a result of the Defendant's ongoing misconduct."

104.     On February 4, 2008, Tom Casault, sent out this email stating that "Though I Have Not Been Associated with the Residential Network Organization for

Over a Year Now, YOU are Still a Member of the Network I Helped Build for Many Years. You are Part of the Family I Introduced to LANDWIN <u>After</u> I Made a $1,000,000 Investment of My Own with LANDWIN. Now that the Market Has Finally Corrected, and LANDWIN, as a *"CONTRARIAN INVESTOR"* is Perfectly Positioned to Begin Buying Again, I Have Never Been More Excited About My Investment with LANDWIN, and Its Ability to Deliver Exceptional Returns. **YOU Should NOT Miss Out On the Extraordinary Opportunity to BENEFIT from LANDWIN'S Proven 22-Year Record of Delivering 30% Per Year Overall Average Returns to Investors."** Defendant TOM CASAULT made these representations to Plaintiff and others similarly situated to him knowing that these statements were false because by February, 2008, Plaintiff had already lost value in his initial investment. Despite these gross misrepresentations, Landwin Management, LLC, was losing money every year due to the mismanagement of Defendant TOM CASAULT, his entity as a Landwin consultant, and his other LANDWIN GROUP, LLC partners.

      105.    Defendant CHRIS PARNASS acted as the lead plaintiff on behalf of the other members of the Landwin Management, LLC, yet did not disclose to the other members that a class action was filed on their behalf. It was clearly a conflict for Defendant CHRIS PARNASS to be the lead plaintiff on behalf of the other non-Landwin members because he was clearly part of the management team. This was not disclosed in the lawsuit.

      106.    Defendants LANDWIN GROUP, LLC, SYLVIA, INC., SMITHDENNISON CAPITAL, LLC, failed to disclose to the members of Landwin Management, LLC, that

they invested over $2,000,000 of their money in a risky investment. Defendants failed to notify the members of the problems with the investment and that they chose Defendant CHRIS PARNASS to be the lead plaintiff.

107.   Neither Defendants CHRIS PARNASS, LANDWIN GROUP, LLC, SYLVIA, INC., SMITHDENNISON CAPITAL, LLC, informed the members of the Landwin Management, LLC, that a settlement was achieved wherein a settlement of over $2,000,000 was paid to CHRIS PARNASS.

108.   To this day, Plaintiff knows nothing about the settlement, whether Defendant CHRIS PARNASS kept all or a portion of the proceeds, whether Defendants LANDWIN GROUP, LLC, SYLVIA, INC., SMITHDENNISON CAPITAL, LLC,  kept it for themselves or returned it to Landwin Management As with everything else there was no transparency and a secrecy when it came to use of the money.

109.   Defendant BANGERTER served as an advisor to both LANDWIN GROUP, LLC. and Landwin Management, LLC.

110.   Plaintiff is informed and believes and thereon alleges that Defendant BANGERTER, as advisor, was personally consulted and gave advice  in each of the decisions, and acted as a co-conspirator in defrauding the network investors of their $13,800,000 investment.

111.   Defendant JACK ANDREWS served as an advisor to both LANDWIN GROUP, LLC. and Landwin Management, LLC. In the latter part of 2003, Defendants SMITHDENNISON CAPITAL, LLC, and JACK R. ANDREWS & ASSOCIATES, LLC, approached Defendant MARSHALL REDDICK to sell commercial real estate

opportunities to the Marshall Reddick Real Estate Network members. Defendant JACK ANDREWS received a portion of the $690,000 finder's fee.

112.   Plaintiff is informed and believes and thereon alleges that Defendant JACK ANDREWS , as advisor, was personally consulted and gave advice  in each of the decisions, and acted as a co-conspirator in defrauding the network investors of their $13,800,000 investment.

113.     On November 12, 2009, Landwin Management LLC was bought out by Sylvia Inc. – owned by Martin Landis and SmithDennison Capital LLC – owned by Sean Dennison with  no monetary considerations given back to the investors. Sean Dennison received $500,000 to step down as Manager and Martin Landis received 51% of the Company, thereby leaving the investors 49% with no compensation, therby further diluting the value of their shares. Martin Landis and Sean Dennison, the  managers made a decision to close down Landwin  Management LLC just after they looted the  investors' funds in this company. This company is being replaced by "Broad Beach Advisors LLC" which is solely owned by Martin Landis and Sean Dennison and this is formed to manage Partners Fund I and II  and other Funds. Broad Beach Advisors LLC is a Delaware  corporation filed by Sean Dennison at the California Secretary of State on February 18, 2009. Despite being bought out of Landwin Management, LLC, Sean Dennison continues to participate in all other Landwin investments as Martin Landis's partner.

///

///

## COUNT ONE

**(ON BEHALF OF PLAINTIFF AND ALL OTHERS SIMILARLY SITUATED AGAINST DEFENDANTS LANDWIN GROUP, LLC, SEAN DENNISON, INDIVIDUALLY AND THROUGH SMITHDENNISON CAPITAL, LLC, MARTIN LANDIS, INDIVIDUALLY AND THROUGH SYLVIA, INC., TOM CASAULT, INDIVIDUALLY AND THROUGH MUIR, LLC, JACK ANDREWS, INDIVIDUALLY AND THROUGH JACK ANDREWS & ASSOCIATES, LLC, NORM BANGERTER, INDIVIDUALLY AND THROUGH NHB FAMILY PARTNERS, LLC, CHRIS PARNASS, INDIVIDUALLY AND THROUGH CPP PROPERTIES, LLC, MARSHALL REDDICK INDIVIDUALLY AND THROUGH COMMERCIAL REAL ESTATE PROPERTIES, LLC, FOR VIOLATIONS OF SECTIONS 10(B), 14(A), 20(A) OF THE EXCHANGE ACT AND RULE 10B-5 PROMULGATED THEREUNDER BASED ON THE SALE OF UNITS OF LANDWIN MANAGEMENT, LLC THROUGH MISREPRESENTATIONS AND OMISSIONS)**

114.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

115.    A unit of interest in Landwin Management, LLC is a security subject to the Exchange Act, including Section 10(b) and Rule 10b-5 promulgated thereunder, because the units of interest possess characteristics that are similar to those of investment securities.

116.  As set forth more fully above, Defendants LANDWIN GROUP, LLC, SEAN DENNISON, individually and through SMITHDENNISON CAPITAL, LLC, MARTIN LANDIS, individually and through SYLVIA, INC., in concert with TOM

CASAULT, individually and through MUIR, LLC, JACK ANDREWS, individually and through JACK ANDREWS & ASSOCIATES, LLC, NORM BANGERTER, individually and through NHB Family Partners, LLC, CHRIS PARNASS, individually and through CPP PROPERTIES, LLC,  MARSHALL REDDICK individually and through COMMERCIAL REAL ESTATE PROPERTIES, LLC,  by use of the means and instrumentalities of interstate commerce and/or of the mails, engaged and participated in a common scheme and continuing course of conduct under which they made material misrepresentations of fact and omitted to state material facts that were necessary to make the statements made, in light of the circumstances in which they were made, not misleading, in connection with the sale of units of interest in Landwin Management, LLC.

117.    The standardized presentations and prospectuses, approved and prepared by  LANDWIN GROUP, LLC, included materially false and misleading representations.

118.    These statements and omissions by Defendants represented an extreme departure from the standards of ordinary care and a danger of misleading buyers. Defendants were under a duty to make full and fair disclosure of the investment.

119.    Defendants knew, or were grossly reckless in their failure to know, that their own statements were materially false and misleading and/or omitted to state material facts that were necessary to make such statements, in light of the circumstances in which they were made, not misleading.

120.    Defendants had the power and duty to control or influence their conduct,

had knowledge of, and reasonable ground to believe in, the existence of a course of conduct in which they made misrepresentations to Plaintiff and the Class, and were culpable participants in any violations of Section 10(b) of the Exchange Act.

121.   The dissemination of false, misleading and deceptive information by Defendants deceived and misled Plaintiff and the other members of the Class, and caused substantial damage to Plaintiffs and the members of the Class.

122.   In ignorance of the materially false and misleading information and the failure to disclose material facts, and in reliance on the affirmative recommendation of the product and the integrity of the statements made by Defendants, Plaintiff and the members of the Class purchased units of interest in Landwin Management, LLC, from Defendants. Plaintiff and the other members of the Class did not know, and in the exercise of due diligence could not have known, of the material misrepresentations and omissions set forth in this complaint. Had Plaintiff and the other members of the Class known the truth, they would not have invested in Landwin Management, LLC.

123.   Each of the Defendants employed devices, schemes or artifices to defraud and engaged in acts, practices and a course of business that operated as a fraud or deceit upon Plaintiff and the Class in connection with the purchase and sale 4 of securities.

124.   Each of the Defendants knowingly and in reckless disregard of the best

interests of Plaintiffs and the Class members engaged in a course of conduct to make recommendations for the sale of units to Landwin Management, LLC, investors without any basis to believe that the investment would perform as it was represented to Plaintiff and the Class members.

125.    For the reasons set forth above, each of the Defendants recommended securities for Plaintiff and the Class without regard to whether the investment would perform as represented.

126.    Each of the Defendants had a duty of fair dealing owed to Plaintiff and the Class, which included a duty to recommend the purchase of securities based on a determination and basis to believe that the product would meet the expectations of the buyer. Each of these Defendants breached these duties by engaging in a course of conduct to recommend the purchase of securities to Plaintiff and the Class without any basis to believe that the investment would perform as represented. Plaintiff and the Class relied upon each of the Defendants to recommend only suitable securities for investment. Each of the Defendants knew or was reckless in not knowing that Plaintiff and the Class so relied, and intended that the Plaintiff and the Class so rely.

127.    By reason of the Individual Control Person Defendants' control of Landwin Management, LLC, as well as their own culpable participation, the Individual Control Person Defendants are controlling persons within the meaning of Section 20(a) of the Exchange Act, and are jointly and severally liable with, and to the same extent as the corporate defendants for violations of Section 10(b) of the Exchange Act and Rule

10b-5 promulgated thereunder, as set forth above.

128.     By reason of Defendants LANDWIN GROUP, LLC, SEAN DENNISON, individually and through SMITHDENNISON CAPITAL, LLC, MARTIN LANDIS, individually and through SYLVIA, INC., in concert with TOM CASAULT, individually and through MUIR, LLC, JACK ANDREWS, individually and through JACK ANDREWS & ASSOCIATES, LLC, NORM BANGERTER, individually and through NHB Family Partners, LLC, CHRIS PARNASS, individually and through CPP PROPERTIES, LLC, and MARSHALL REDDICK individually and through COMMERCIAL REAL ESTATE PROPERTIES, LLC's control of Landwin Management, LLC, as well as its own culpable participation, these defendants are controlling persons within the meaning of Section 20(a) of the Exchange Act, and is jointly and severally liable with, and to the same extent for violations of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder, as set forth above.

129.     The Individual Defendants, as top executive officers and/or directors of the Company, are liable as direct participants in the wrongs complained of herein. Through their positions of control and authority as officers and/or directors of the Company, each of the Individual Defendants was able to and did control the conduct complained of herein.

130.     The Individual Defendants acted with scienter in that they either had actual knowledge of the fraud set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose the true facts, even though such facts

were available to them. The Individual Defendants were among the senior management and/or directors of the Company and were therefore directly responsible for the fraud alleged herein.

131.    The Company relied upon the Individual Defendants' fraud in granting the Individual Defendants options to purchase transfer shares of the Company's units, as alleged herein.

132.    As a direct and proximate result of the Individual Defendants' fraud, the Company has sustained millions of dollars in damages, including, but not limited to, the additional compensation unjustifiably incurred, and the overvaluation of the company's worth and income. This includes the latest proxy wherein Sean Dennison was paid $500,000 to leave the Company and Martin Landis received a 51% interest, thereby diluting further the value of Plaintiff and other Class member's shares in the Company.

133.    Rule 14-A-9, promulgated pursuant to §14(a) of the Exchange Act, provides that no proxy statement shall contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. §240.14-A-9.

134.    The proxy statements described herein violated §14(a) and Rule 14-A-9 because they omitted material facts, including the fact that the Individual Defendants were causing Landwin Management, LLC,  to deplete the assets of the Company, make

risky investments without advising the members, suing and recovering for the poor investment without notifying the members of either fact, which the Individual Defendants were aware of and participated starting in 2005.

135.    In the exercise of reasonable care, the Individual Defendants should have known that the proxy statements were materially false and misleading.

136.    The misrepresentations and omissions in the proxy statements were material. The proxy statements were an essential link in the accomplishment of the continuation of the Individual Defendants' unlawful defrauding scheme, as revelations of the truth would have immediately thwarted a continuation of the shareholders' endorsement of the severance package to Sean Dennison and the illegal transfer of shares to Martin Landis.

137.    The Company was damaged as a result of the material misrepresentations and omissions in the Proxy Statements.

138.    Defendants LANDWIN GROUP, LLC, SEAN DENNISON, individually and through SMITHDENNISON CAPITAL, LLC, MARTIN LANDIS, individually and through SYLVIA, INC., in concert with TOM CASAULT, individually and through MUIR, LLC, JACK ANDREWS, individually and through JACK ANDREWS & ASSOCIATES, LLC, NORM BANGERTER, individually and through NHB Family Partners, LLC, CHRIS PARNASS, individually and through CPP PROPERTIES, LLC, and MARSHALL REDDICK individually and through COMMERCIAL REAL ESTATE

PROPERTIES, LLC, by virtue of their positions with Landwin Management, LLC, and

their specific acts, were, at the time of the wrongs alleged herein, controlling persons of

Landwin Management, LLC, within the meaning of §20(a) of the Exchange Act. They

had the power and influence and exercised the same to cause Landwin Management,

LLC, to engage in the illegal conduct and practices complained of herein.

139.    As a result of Defendants' actions, Plaintiffs and the Class have been

injured and are entitled to, among other things and at their election, damages and/or

rescission and restitution.

## COUNT TWO

**(ON BEHALF OF PLAINTIFFS AND ALL OTHERS SIMILARLY SITUATED
AGAINST DEFENDANTS LANDWIN GROUP, LLC, SEAN DENNISON,
INDIVIDUALLY AND THROUGH SMITHDENNISON CAPITAL, LLC,
MARTIN LANDIS, INDIVIDUALLY AND THROUGH SYLVIA, INC., TOM
CASAULT, INDIVIDUALLY AND THROUGH MUIR, LLC, JACK ANDREWS,
INDIVIDUALLY AND THROUGH JACK ANDREWS & ASSOCIATES, LLC,
NORM BANGERTER, INDIVIDUALLY AND THROUGH NHB FAMILY
PARTNERS, LLC, CHRIS PARNASS, INDIVIDUALLY AND THROUGH CPP
PROPERTIES, LLC, MARSHALL REDDICK INDIVIDUALLY AND THROUGH
COMMERCIAL REAL ESTATE PROPERTIES, LLC, FOR VIOLATIONS OF
THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT (18
U.S.C. 1962)) BASED ON THE SALE OF UNITS OF LANDWIN MANAGEMENT,
LLC THROUGH MISREPRESENTATIONS AND OMISSIONS)**

140.    Plaintiff repeats and realleges each and every allegation contained above

as if fully set forth herein.

141.    This count is brought by Plaintiff against defendants Defendants

LANDWIN GROUP, LLC, SEAN DENNISON, individually and through

SMITHDENNISON CAPITAL, LLC, MARTIN LANDIS, individually and through

SYLVIA, INC., in concert with TOM CASAULT, individually and through MUIR, LLC,

JACK ANDREWS, individually and through JACK ANDREWS & ASSOCIATES,

LLC, NORM BANGERTER, individually and through NHB Family Partners, LLC,

CHRIS PARNASS, individually and through CPP PROPERTIES, LLC, and

MARSHALL REDDICK individually and through COMMERCIAL REAL ESTATE

PROPERTIES, LLC,   (collectively the "RICO Defendants") alleging a cause of action

under 18 U.S.C. §1962(d), for conspiring to violate 18 U.S.C. § 1962(c).

142.    At all relevant times, Plaintiff and RICO Defendants were "persons"

pursuant to § 1961(3).

143.    Plaintiff is a "person" within the meaning of 18 U.S.C. § 1964(c).

144.    At all relevant times, Landwin Management, LLC, a limited liability

company, was an "enterprise" pursuant to § 1961(4).

145.    The following persons, and others presently unknown, have been

members of and constitute an "enterprise" within the meaning of RICO, which plaintiffs

collectively refer to as the "Landwin Enterprise": 1) LANDWIN GROUP, LLC, 2)

SEAN DENNISON, 3) SMITHDENNISON CAPITAL, LLC, 4) MARTIN LANDIS, 5)

SYLVIA, INC., 6) TOM CASAULT, 7) MUIR, LLC, 8) JACK ANDREWS, 9) JACK

ANDREWS & ASSOCIATES, LLC, 10) NORM BANGERTER, 11) NHB Family

Partners, LLC, 12) CHRIS PARNASS, 13) CPP PROPERTIES, LLC, 14) MARSHALL

REDDICK, 15) COMMERCIAL REAL ESTATE PROPERTIES, LLC.

146.     The Landwin Enterprise is an ongoing enterprise, which engages in, and whose activities affect, interstate and international commerce. The Landwin Enterprise continues to operate in California, and there is a continuing threat of criminal activity until the Landwin Enterprise has accomplished its goal of defrauding unsuspecting investors who believe the numerous misrepresentations made as described above. The investors invested $50,000 for one unit of ownership in Landwin Management, LLC upon false representations that it was a successful commercial real estate management company and that the investors would receive over 400% return in 10 years. The enterprise is comprised of a system where the investor has no decision power in the management of the company and was uninformed of who their money was being used by the managers of the Company. By doing so, the enterprise collectively profits from the sales transaction while the investor is vulnerable because of fraud and deceit.

147.     While the defendants participate in the enterprise and are a part of it, the defendants also have an existence separate and distinct from the enterprise.

148.     Defendants conduct or participate in the conduct of the Landwin Enterprise's affairs through a pattern of racketeering activity.

149.     Defendants' participation in the Landwin Enterprise is necessary for the successful operation of defendants' scheme.

150.     The enterprise has an ascertainable structure separate and apart from the

pattern of racketeering activity in which the defendants engage. The Landwin Enterprise operated and operates with two related structures, one of which is headed by Martin Landis individually and through Sylvia, Inc. (Which owns Landwin Group, Inc. a 51% owner of Landwin Management, LLC), and the other of which is headed by Sean Dennison individually and through SmithDennison Capital, LLC (which recently had his interest in Landwin Management, LLC bought out for $500,000). They acted in a conspiracy to defraud in concert with TOM CASAULT, individually and through MUIR, LLC, JACK ANDREWS, individually and through JACK ANDREWS & ASSOCIATES, LLC, NORM BANGERTER, individually and through NHB Family Partners, LLC, CHRIS PARNASS, individually and through CPP PROPERTIES, LLC, and MARSHALL REDDICK individually and through COMMERCIAL REAL ESTATE PROPERTIES, LLC,   their partners in the Landwin Enterprise.

**Predicate Acts**

151.     The numerous predicate acts of mail and wire fraud described herein are part of the fraudulent schemes by defendants designed to defraud unsuspecting investors.

152.     Section 1961(1) of RICO provides that "racketeering activity" is any act indictable under any of the provisions of Title 18, United States Code § 1341 (relating to mail fraud), §1343 (relating to wire fraud), and § 1346 (relating to scheme or artifice to defraud).

153.     In carrying out the overt acts and fraudulent schemes described above,

the defendants engaged in, among other things, conduct in violation of federal laws, including 18 U.S.C. §§ 1341, 1343, and 1346, 18 U.S.C. § 1952(a), and 18 U.S.C. §1961 et seq.

154.    Examples of the predicate acts committed by defendants pursuant to their scheme to defraud investors include those set forth above in paragraphs 92 through 113. Upon information and belief, there have been numerous other predicate acts by defendants that are presently unknown to plaintiffs.

**Mail And Wire Fraud**

155.    For the purpose of executing and/or attempting to execute their scheme to defraud Plaintiff and other class members by means of false pretenses, representations or promises, the defendants, in violation of 18 U.S.C. § 1341, placed in post offices and/or in authorized repositories for mail matter and things to be sent or delivered by the Postal Service, and received matter and things therefrom, including but not limited to newsletters and agreements, correspondence, faxes, and other materials.

156.    For the purpose of executing and/or attempting to execute their scheme to defraud plaintiffs by means of false pretenses, representations or promises, the defendants, in violation of 18 U.S.C. § 1343, transmitted and received by wire matter and things therefrom, including but not limited to agreements, correspondence, faxes, and other materials.

157.    In those matters and things sent or delivered by the Postal Service, by

wire, and through other interstate and international electronic media, defendants falsely and fraudulently misrepresented and/or fraudulently concealed material facts from plaintiffs, in violation of 18 U.S.C. §§ 1341 and 1343, including but not limited to those acts set forth above in Paragraphs 92 through 113.

158.    As a result, plaintiffs have been injured in their business or property by the defendants' overt acts and racketeering activities.

**Pattern of Racketeering Activity**

159.    As set forth herein, the defendants have engaged in a "pattern of racketeering activity," as defined in 18 U.S.C. § 1961(5), by committing and/or conspiring to commit at least two such acts of racketeering activity, as described herein, within the past ten years. Defendants have committed multiple acts of racketeering activity within such period. Each such act of racketeering activity was related, had similar purposes, involved the same or similar participants and methods of commission, and had similar results impacting upon similar victims, including plaintiffs.

160.    The multiple acts of racketeering activity committed and/or conspired to commit by defendants, as described above, were related to each other and amount to and pose a threat of continued racketeering activity, and, therefore, constitute a "pattern of racketeering activity," as defined in 18 U.S.C. § 1961(5).

**RICO -- 18 U.S.C. 1962(c)**

161.    Section 1962(c) of RICO provides that "[i]t shall be unlawful for any

person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."

162.    Through the patterns of racketeering activities outlined above, the defendants have conducted and participated in the affairs of the Landwin Enterprise.

163.    As a direct and proximate result of defendants' illegal conduct in violation of 18 U.S.C. § 1962(c), Plaintiff and other Class members have been injured in their business or property, including, but not limited, by: (a) the loss of value of Plaintiff and other Class members' ownership interests in the cash depleted Company; and (b) the lost profits Plaintiff and other Class members would have achieved but for defendants' unlawful conduct.

164.    With respect to their violations of 18 U.S.C. § 1962(c), defendants have acted at all times with malice toward Plaintiff and other Class members, and with the specific intent to commit the predicate acts alleged herein and to participate in the Landwin Enterprise.

**RICO -- 18 U.S.C. 1962(d)**

165.    This claim seeks relief for the defendants' activities described herein for violations of 18 U.S.C. § 1962(d), for conspiring to violate 18 U.S.C. § 1962(c).

166.    Section 1962(d) of RICO provides that "[i]t shall be unlawful for any

person to conspire to violate any of the provisions of subsection (a), (b) or (c) of this section."

167.     Absent defendants' conspiracy and joint efforts, defendants' fraudulent enterprise would not be successful.

168.     Defendants have violated § 1962(d) by conspiring to violate 18 U.S.C. § 1962(c). The object of this conspiracy has been and is to defraud unsuspecting investors im the purchase of units in Landwin Management, LLC, and to conduct and/or participate in, directly or indirectly, the conduct of the affairs of the § 1962(c) enterprise described above through a pattern of racketeering activity.

169.     Defendants and their agents have been joined in their conspiracies to violate 18 U.S.C. § 1962(c) by various third parties not named as defendants herein.

170.     Defendants agreed to the objective of an 18 U.S.C. § 1962(d) violation of RICO by conspiring to violate 18 U.S.C. § 1962(c), and agreed to commit overt acts and predicate acts, as alleged in this Complaint, to effectuate that conspiracy. Defendants were aware that their acts were part of an overall pattern of racketeering activity.

171.     As a direct and proximate result of the defendants' overt acts and predicate acts in furtherance of violating 18 U.S.C. § 1962(d) by conspiring to violate 18 U.S.C. § 1962(c), plaintiffs have been and are continuing to be injured in their business or property as described above in Paragraph 56.

172.     As a result of the above-described racketeering activity, Plaintiff and the

other Class members have been collectively damaged in their business and/or property in an amount of no less than $50,000.

173.    Pursuant to § 1964(c), Plaintiff and the other Class members are entitled to recover threefold their damages plus costs and attorneys' fees from the RICO defendants.

## COUNT THREE

**(UNTRUE OR MISLEADING ADVERTISING (BUS. & PROF. CODE SECTION 17500) (ON BEHALF OF PLAINTIFF AND ALL OTHERS SIMILARLY SITUATED AGAINST ALL DEFENDANTS)**

174.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

175.    Through its advertising practices and promotional materials, including the various uniformly deceptive promotions, solicitations, and advertisements created, approved and distributed by it, Defendants disseminated untrue and misleading statements and omitted material facts in violation of California Business and Professions Code §§§§17500, *et seq.*

176.    The advertising and other conduct described herein concerning the Landwin Management, LLC investment was "likely to deceive." This false advertising is ongoing and continues to this date.

177.    Defendants  know or should know that these representations concerning the Landwin Management, LLC investment are false and misleading.

178.    The representations concerning Landwin Management, LLC investment were

1

2  made, or caused to be made, before the general public in this state.

4        179.    Such conduct is ongoing and continues to this date.

5

6        180.    Plaintiff and the other Class members are therefore entitled to the relief

7  available under Business and Professions Code §§§§17500, *et seq.*, as detailed below in the

8  prayer for relief.

9

10                                    **CLAIM FOUR**

11      **(COMMISSION OF UNLAWFUL, UNFAIR, AND FRAUDULENT BUSINESS
          ACTS AND PRACTICES (BUS. & PROF. CODE SECTION 17200)**
12  **(ON BEHALF OF PLAINTIFF AND ALL OTHERS SIMILARLY SITUATED
13  AGAINST ALL DEFENDANTS)**

14       181.    Plaintiff repeats and realleges each and every allegation contained above

15  as if fully set forth herein.

16

17       182.    California Business and Professions Code §§17200, *et seq.* prohibits acts of

18  unfair competition, which mean, and include, any "fraudulent business act or practice." Conduct

19  which is "likely to deceive" is "fraudulent" within the meaning of Section 17200.

20

21       183.    As more fully described above, defendants' acts and practices are likely to

22  deceive, constituting a fraudulent business act or practice.

23

24       184.    Such conduct is ongoing and continues to this date.

25

26       185.    Plaintiff and the other Class members are therefore entitled to the relief available

27  under Business and Professions Code §§17200, *et seq.*, as detailed below.

28

                                     **CLAIM FIVE**

1

2

### (NEGLIGENT REFERRAL)

### (ON BEHALF OF PLAINTIFF AND ALL OTHERS SIMILARLY SITUATED AGAINST DEFENDANTS MARSHALL REDDICK, MARSHALL REDDICK REALTY, INC., MARSHALL REDDICK SEMINARS, INC.)

186.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

187.     Defendants MARSHALL REDDICK, MARSHALL REDDICK REALTY, INC., MARSHALL REDDICK SEMINARS, INC. owed Plaintiff and other Class members a duty of reasonable care in referring them to Landwin Group, LLC and making the recommendation that they purchase one or more units in Landwin Management, LLC.

188.     Defendants MARSHALL REDDICK, MARSHALL REDDICK REALTY, INC., MARSHALL REDDICK SEMINARS, INC., breached this duty of care by negligently and unreasonably making various false statements to plaintiff, including but not limited to that Landwin Management, LLC was a good investment and that the promoters of the investment, ie., Landwin Group, LLC, was reputable and successful.

188.     As a direct result of defendants' breach of this duty, Plaintiff and the other Class members sustained damages in an amount of not less than $13,800,000.

### CLAIM SIX

### (NEGLIGENT MISREPRESENTATION)

### (ON BEHALF OF PLAINTIFF AND ALL OTHERS SIMILARLY SITUATED AGAINST DEFENDANTS LANDWIN GROUP, LLC, SEAN DENNISON, INDIVIDUALLY AND THROUGH SMITHDENNISON CAPITAL, LLC, MARTIN LANDIS, INDIVIDUALLY AND THROUGH SYLVIA, INC.)

189.     Plaintiff repeats and realleges each and every allegation contained above

as if fully set forth herein.

190.     Plaintiffs alleges that the Defendants LANDWIN GROUP, LLC, SEAN DENNISON, INDIVIDUALLY AND THROUGH SMITHDENNISON CAPITAL, LLC, MARTIN LANDIS, INDIVIDUALLY AND THROUGH SYLVIA, INC., and each of them, set forth negligent misrepresentations in a business of professional capacity which they knew Plaintiff and other Class members would rely upon.

191.     Plaintiff reasonably relied upon the Defendants LANDWIN GROUP, LLC, SEAN DENNISON, INDIVIDUALLY AND THROUGH SMITHDENNISON CAPITAL, LLC, MARTIN LANDIS, INDIVIDUALLY AND THROUGH SYLVIA, INC.,  and each of their negligent misrepresentations.

192.     Plaintiff further alleges that, due to their reliance on the negligent misrepresentations of Defendants, Plaintiff and other Class members  purchased units in Landwin Management, LLC..

193.     As a direct, foreseeable, and proximate result of Defendants' negligent misrepresentations Plaintiff and other Class members have suffered and continue to suffer substantial losses in the amount in excess of $50,000 per unit.

**CLAIM SEVEN**

**(INTENTIONAL MISREPRESENTATION)**

**(ON BEHALF OF PLAINTIFF AND ALL OTHERS SIMILARLY SITUATED AGAINST DEFENDANTS LANDWIN GROUP, LLC, SEAN DENNISON, INDIVIDUALLY AND THROUGH SMITHDENNISON CAPITAL, LLC, MARTIN LANDIS, INDIVIDUALLY AND THROUGH SYLVIA, INC.)**

194.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

195.    Plaintiffs alleges that the Defendants LANDWIN GROUP, LLC, SEAN DENNISON, INDIVIDUALLY AND THROUGH SMITHDENNISON CAPITAL, LLC, MARTIN LANDIS, INDIVIDUALLY AND THROUGH SYLVIA, INC., and each of them, set forth intentional misrepresentations in a business of professional capacity which they knew Plaintiff and other Class members would rely upon.

196.    Plaintiff reasonably relied upon the Defendants LANDWIN GROUP, LLC, SEAN DENNISON, INDIVIDUALLY AND THROUGH SMITHDENNISON CAPITAL, LLC, MARTIN LANDIS, INDIVIDUALLY AND THROUGH SYLVIA, INC.,  and each of their intentional misrepresentations.

197.    Plaintiff further alleges that, due to their reliance on the intentional misrepresentations of Defendants, Plaintiff and other Class members purchased units in Landwin Management, LLC.

198.    As a direct, foreseeable, and proximate result of Defendants' intentional misrepresentations Plaintiff and other Class members  have suffered and continue to suffer substantial losses in excess of $50,000 per unit.

199.    Defendants, and each of them, committed the acts described in the complaint oppressively, fraudulently, and maliciously, entitling Plaintiffs to an award of punitive damages against Defendants in an amount appropriate to punish and make an example of Defendants, and each of them.

## CLAIM EIGHT

### (DECEIT/CONCEALMENT)

**(ON BEHALF OF PLAINTIFF AND ALL OTHERS SIMILARLY SITUATED AGAINST DEFENDANTS LANDWIN GROUP, LLC, SEAN DENNISON, INDIVIDUALLY AND THROUGH SMITHDENNISON CAPITAL, LLC, MARTIN LANDIS, INDIVIDUALLY AND THROUGH SYLVIA, INC.)**

200.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

201.     The representations which defendants made to Plaintiff and other Class members regarding the terms, value, appropriateness, and suitability of their services and products and their intent to perform their promises were false, misleading, and misrepresented both the law, the facts, and/or defendants' intent.

202.     Defendants asserted these representations as facts although they had no reasonable grounds for believing them to be true.

203.     Defendants willfully deceived plaintiffs with the intent to induce them to alter their positions to their injury and harm.

204.     Defendants deliberately concealed the true facts regarding the worth of Landwin Management, LLC, from Plaintiff and other Class members, and either deliberately concealed the true facts known to them or failed to make any reasonable investigation to determine the true facts from which representations were made as to the value of the Company to determine whether they were true or false, and without having any sufficient basis on which to make any representations, knowingly made false

representations, concealing the value of the Company as set forth in this complaint.

205.    Defendants, and each of them, concealed the facts when they each knew the true and correct facts regarding value of the Company.

206.    The concealment of the true facts from Plaintiff and other Class members was done with the intent to induce Plaintiff and other Class members to enter into the agreement.

207.    Plaintiff and other Class members' reliance on statements made by Defendants and each of them, was justified in that Defendants made representations that the business provided a 30% every year for over 20 years and that no investor has ever lost money.

208.    As a proximate result of the fraud and deceit alleged, Plaintiff and other Class members were induced to purchase units in Landwin Management, LLC. Plaintiff and other Class members have been damaged in excess of $50,000 per unit.

209.    Plaintiff and other Class members' damages include out-of-pocket costs and expenses.

210.    Defendants' conduct constituted oppression, fraud, and malice, and Plaintiff and other Class members are entitled to recover damages for the sake of example and by way of punishing defendants pursuant to Civil Code § 3294.

## **CLAIM NINE**

### **(BREACH OF FIDUCIARY DUTY)**

**(ON BEHALF OF PLAINTIFF AND ALL OTHERS SIMILARLY SITUATED AGAINST DEFENDANTS LANDWIN GROUP, LLC, SEAN DENNISON, INDIVIDUALLY AND THROUGH SMITHDENNISON CAPITAL, LLC, MARTIN LANDIS, INDIVIDUALLY AND THROUGH SYLVIA, INC.)**

211.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

212.    Plaintiff and other Class members, looked to Defendants for prudent and reasonable advice as to the investment in Landwin Management, LLC, and thereby depended upon Defendants to provide them with appropriate and correct advice. Defendants were aware that Plaintiff and other Class members were depending upon them for advice and defendants accepted that responsibility. Accordingly, a fiduciary relationship existed between Plaintiff, the other Class members,  and Defendants.

213.    Defendants breached their fiduciary duties by negligently and unreasonably making various false statements to Plaintiff and other Class members, including but not limited to: that the business provided a 30% every year for over 20 years and that no investor has ever lost money.

214.    As a direct result of defendants' breach of their fiduciary duties of the utmost good faith and fidelity, Plaintiff and other Class members sustained damages in an amount of not less than $50,000 per unit.

215.    Defendants' wrongful conduct constituted oppression, fraud, and malice and plaintiff is entitled to recover damages for the sake of example and by way of punishing defendants pursuant to Civil Code § 3294.

216.    Plaintiff is entitled to recover treble damages pursuant to Civil Code § 3345.

**CLAIM TEN**

**(UNJUST ENRICHMENT/RESTITUTION/ACCOUNTING)**

**(ON BEHALF OF PLAINTIFF AND ALL OTHERS SIMILARLY SITUATED AGAINST DEFENDANTS LANDWIN GROUP, LLC, SEAN DENNISON, INDIVIDUALLY AND THROUGH SMITHDENNISON CAPITAL, LLC, MARTIN LANDIS, INDIVIDUALLY AND THROUGH SYLVIA, INC.)**

217.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

218.    Defendants unjustly received benefits at the expense of Plaintiff and the other Class members through their wrongful conduct, including Defendants' high level of compensation despite their lack of diligence in developing Landwin Management, LLC's business relationships and other unfair business practices. Defendants continue to unjustly retain these benefits at the expense of Plaintiff and the other Class members. It would be unjust for Defendants to retain any value they obtained as a result of their wrongful conduct.

219.    Plaintiff and other Class members are accordingly entitled to full restitution of all amounts in which Defendants have been unjustly enriched at their expense.

220.    Defendants have received money as a result of their misconduct, at Plaintiff and other Class members' expense, and that some or all of such money is rightfully due to them.

221.    The amount of money due from Defendants to Plaintiff and the other Class members is unknown to them and cannot be ascertained without an accounting of the income and gross profits Defendants have obtained through their wrongful and unlawful conduct. Plaintiff and the other Class members are entitled, therefore, to a full accounting.

**CLAIM ELEVEN**

( NEGLIGENT INTERFERENCE WITH  PROSPECTIVE ADVANTAGE)

(ON BEHALF OF PLAINTIFF AND ALL OTHERS SIMILARLY SITUATED AGAINST DEFENDANTS MARSHALL REDDICK,   MARSHALL REDDICK COMMERCIAL REAL ESTATE NETWORKS, INC., MARSHALL REDDICK SEMINARS, INC.)

222.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

223.    Landwin Management, LLC,  has and had an expectancy in continuing and advantageous economic relationships with current and prospective members of the Marshall Reddick Real Estate Network.

224.    On March 17, 2006, Defendant MARSHALL REDDICK entered into a contract with Defendant LANDWIN GROUP, LLC, for the purpose of giving Landwin Group the exclusive referral of all prospective investors for commercial real estate investment opportunities to Landwin.Group. Defendant MARSHALL REDDICK is a partner of Defendant LANDWIN GROUP, INC, and received a portion of the $690,000 finder's fee.

225.    According to the lawsuit filed by Landwin against Reddick, Los Angeles Superior Court Case number BC378287, paragraph 12,  it is alleged that "Defendant Marshall Reddick Commercial Real Estate Network, Inc., is an entity formed by Marshall Reddick on September 20, 2007, which Plaintiffs believe was created to divert funds and avoid the consequences of the suit herein."

226.    The lawsuit at paragraph 25 states that the  Reddick Defendants "were

secretly themselves using the network member's data, as well as making the network and data available to third parties for solicitation of multiple commercial real estate investments. The Defendants knew they had acted in contradiction to their representation. After discovery of the misrepresentation by the Plaintiffs in January 2007, these Defendants were confronted by the true facts of their action. The Defendants acknowledged their breach and misrepresentation. But they then misrepresented that such conduct had ceased. Even while the Plaintiffs worked in good faith to provide the Defendants every reasonable opportunity to desist, and preserve the business relationship for the benefit of the network members, the Defendant continued to breach in multiple occasions during February and March, 2007. It is now believed that they never intended to follow through on any of the representations they had made. Finally on April 5, 2007, the Landwin Group gave written notice of breach and demanded that Marshall Reddick cease and desist."

227.    According to the complaint, in paragraph 33 it states that Landwin Management, LLC has "lost significant, multi-million dollar income from fees and profit-sharing rights to which they are entitled from Landwin REIT, as that public REIT's 'asset manager' . . ." and "has suffered additional loss of fee and profit-sharing income due to the inability of Landwin Partner's Find II, LLC, to raise capital from network members as a result of the Defendant's ongoing misconduct."

228.    These relationships contained the probability of future economic benefit in the form of promoting a the sale of a REIT where the proceeds would be used to purchase properties which Landwin Management, LLC, would have managed and earned fees from it. Had

1

2  Defendants refrained from engaging in the unlawful and wrongful conduct described in this

4  complaint, there is a substantial probability that Plaintiff and the other Class members would

5  have received an increase in the value of their investments

6      229.    Defendants knew or should have known about the economic relationship,

7  described above, and knew or should have known that these relationships would be interfered

8
9  with and disrupted if Defendants failed to act with reasonable care in their promotion of the

10  REIT. Defendants failed to act with reasonable care. Instead, they started a competing

11  commercial real estate division which interfered with Landwin Management, LLC's business

12  plan.

13     230.    Defendants' conduct was wrongful by a measure beyond the fact of the

14
   interference itself. Defendants gained financially at the expense of Plaintiff and other Class

15
   members by breaching its agreement with Landwin, Group, LLC.
16

17     231.   This conduct, as alleged above, constitutes violations of numerous state and federal

18  statutes and codes.

19     232.   Defendants' conduct also constitutes breach of contract, and unjust enrichment.

20     233.   As a result of Defendants' acts, the above-described relationships have been

21
   actually disrupted, causing certain harm to Plaintiff and the other Class members.
22

23     234.   As a direct and proximate result of Defendants' actions, Plaintiff and the other

24  Class members suffered economic harm, including, but not limited to, loss of profits from the

25  future management fees created by the REIT. Defendants' wrongful conduct was a substantial

26  factor in causing this harm.

27
                            **CLAIM TWELVE**
28

        **( INTENTIONAL INTERFERENCE WITH  PROSPECTIVE ADVANTAGE)**

**(ON BEHALF OF PLAINTIFF AND ALL OTHERS SIMILARLY SITUATED AGAINST DEFENDANTS MARSHALL REDDICK,  MARSHALL REDDICK COMMERCIAL REAL ESTATE NETWORKS, INC.,  MARSHALL REDDICK SEMINARS, INC.)**

235.   Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

236.   Landwin Management, LLC  has and had an expectancy in continuing and advantageous economic relationships with current and prospective investors of the Marshall Reddick Real Estate Network.

237.   These relationships contained the probability of future economic benefit in the form of profitable management contracts for the REIT. Had Defendants refrained from engaging in the unlawful and wrongful conduct described in this complaint, there is a substantial probability that Landwin Management, LLC, would have been profitable.

238.   Defendants were aware of these economic relationships and intended to interfere with and disrupt them by wrongfully starting a competing commercial real estate program in contravention of its contractual agreement with Landwin Group, LLC.

239.   Defendants' conduct was wrongful by a measure beyond the fact of the interference itself. Defendants owed Plaintiff and other Class members a fiduciary duty not to interfere with an investment Defendants had promoted and approved of.

240.   This conduct, as alleged above, constitutes violations of numerous state and federal statutes and codes. Defendants' conduct also constitutes trespass to chattels, breach of contract, and unjust enrichment.

241.   As a result of Defendants' acts, the above-described relationships have been actually disrupted, causing certain harm to Plaintiff and the other Class members.

242.   As a direct and proximate result of Defendants' actions, Plaintiff and the other Class members have suffered economic harm, including, but not limited to, loss of profits from management fees of the REIT. Defendants' wrongful conduct was a substantial factor in causing this harm.

243.   Defendants' interference with Plaintiff and the other Class members' prospective economic advantage with the REIT, as described above, was willful, malicious, oppressive, and in conscious disregard of Plaintiff and the other Class members' rights, and Plaintiff and the other Class members are therefore entitled to an award of punitive damages to punish their wrongful conduct and deter future wrongful conduct.

WHEREFORE, Plaintiffs pray for relief and judgment as follows:

## VIOLATION OF SECURITIES ACT OF 1933 AND THE

## SECURITIES EXCHANGE ACT OF 1934 (§§10(B),14(A),20(A))

A. Determining that this action is a proper class action under Rule 23 of the Federal Rules  of Civil Procedure, and appoint Plaintiff as Class Representative and Law Offices of Andrew M. Wyatt as Class Counsel;

B. Awarding compensatory damages in favor of Plaintiff and Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing in an amount to be proven at trial, including pre-judgment interest thereon and rescission of Plaintiff's and Class members'

contracts with Defendants, and awarding restitution of any monies paid to Defendants.

C. Against all of the Individual Defendants and in favor of the Plaintiff and Class members for the amount of damages sustained by the Company as a result of the Individual Defendants' breaches of fiduciary duties and statutory violations;

D. Imposing a constructive trust for the benefit of the Plaintiff and Class members on all profits resulting from Defendants' wrongful conduct;

E. Awarding to plaintiffs the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses;

F. Granting such other and further relief as the Court deems just and proper.

## VIOLATION OF RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT (18 U.S.C. 1962)

H.  Awarding treble damages, attorneys' fees and costs, an award of interest, including prejudgment interest on all amounts claimed as allowed by law; and, for any other and further relief as the Court may deem just and proper, all provided by statute as a result of defendants' violations of 18 U.S.C. § 1962 in favor of Plaintiff and Class members against named defendants for the damages sustained in violation of RICO.

## UNTRUE OR MISLEADING ADVERTISING (BUS. & PROF. CODE SECTION 17500)

I.  An order requiring disgorgement of, imposing a constructive trust upon, or

impounding the ill-gotten monies and profits of Defendants  or freezing

Defendants' assets; and/or requiring Defendants to pay restitution to Plaintiffs and

all Class members, including return of fees, and restitution of the investment

earnings that Plaintiff and Class members would have received on those amounts if

they had not been improperly induced to invest in Landwin Management, LLC,

and/or restoring all funds acquired by means of any act or  practice declared by this

Court to be an unlawful, fraudulent, or unfair business act or practice in violation of

California Business & Professions Code § 17500 *et seq.*

## COMMISSION OF UNLAWFUL, UNFAIR, AND FRAUDULENT BUSINESS ACTS AND PRACTICES (BUS. & PROF. CODE SECTION 17200)

J.  An order requiring disgorgement of, imposing a constructive trust upon, or

impounding the ill-gotten monies and profits of Defendants  or freezing

Defendants' assets; and/or requiring Defendants to pay restitution to Plaintiffs and

all Class members, including return of fees, and restitution of the investment

earnings that Plaintiff and Class members would have received on those amounts if

they had not been improperly induced to invest in Landwin Management, LLC,

and/or restoring all funds acquired by means of any act or  practice declared by this

Court to be an unlawful, fraudulent, or unfair business act or practice in violation of

California Business & Professions Code § 17200 *et seq.*

## NEGLIGENT REFERRAL

K. Compensatory damages according to proof;

### NEGLIGENT MISREPRESENTATION

L. Compensatory damages according to proof;

### INTENTIONAL MISREPRESENTATION

M. Compensatory damages according to proof;

N. Punitive damages according to proof;

### DECEIT/CONCEALMENT

O. Compensatory damages according to proof;

P. Punitive damages according to proof;

### BREACH OF FIDUCIARY DUTY

Q. Compensatory damages according to proof;

R. Punitive damages according to proof;

### UNJUST ENRICHMENT/RESTITUTION/ACCOUNTING

S. Full restitution of all amounts in which Defendants have been unjustly enriched at Plaintiff and Class members' expense;

T. For an accounting;

### NEGLIGENT INTERFERENCE WITH PROSPECTIVE ADVANTAGE

U. Compensatory damages according to proof;

### INTENTIONAL INTERFERENCE WITH  PROSPECTIVE ADVANTAGE

V. Compensatory damages according to proof;

W. Punitive damages according to proof;

### FOR ALL CLAIMS

X.  Interest pursuant to CC §§ 3287 and 3288;

Y.  Costs pursuant to CCP § 1032; and

Z.  Such other relief as the Court may deem just and proper.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38, Plaintiff demand a trial by jury for all legal claims alleged herein.

DATED: February 22, 2010                     **LAW OFFICES OF ANDREW M. WYATT**

By:
ANDREW M. WYATT
Attorney for Plaintiff
MICHAEL KRONK

Name & Address:
Andrew M. Wyatt, SBN # 158759
Law Offices of Andrew M. Wyatt
20750 Ventura Boulevard, Suite 440
Woodland Hills, CA 91364
(818) 710-3813

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

MICHAEL KRONK, *on behalf of himself and all others similarly situated*

PLAINTIFF(S)

v.

LANDWIN GROUP, LLC, SYLVIA, INC.,
SMITHDENNISON CAPITAL, LLC, JACK R.
ANDREW AND ASSOCIATES, LLC,

*See attached*   DEFENDANT(S).

CASE NUMBER

**SACV10-00242 CJC MLGx**

**SUMMONS**

TO:   DEFENDANT(S): LANDWIN GROUP, LLC, SYLVIA, INC., SMITHDENNISON CAPITAL, LLC, JACK R. ANDREW AND ASSOCIATES, LLC, NHB FAMILY PARTNERS, LLC, cont'd next page

A lawsuit has been filed against you.

Within ___21___ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, __Law Offices of Andrew M. Wyatt__, whose address is __20750 Ventura Boulevard, Suite 200, Woodland Hills, California 91364__. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: __MAR - 1 2010__

By: ___CHRISTOPHER POWERS___

Deputy Clerk   **SEAL**

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

CAPTION CONTINUED FROM PREVIOUS PAGE

NHB FAMILY PARTNERS, LLC, CPP PROPERTIES, LLC, MUIR, LLC, MARSHALL REDDICK REALTY, INC., MARSHALL REDDICK SEMINARS, INC.,COMMERCIAL REAL ESTATE PROPERTIES, LLC, MARSHALL REDDICK COMMERCIAL REAL ESTATE NETWORKS, INC., SEAN DENNISON, MARTIN LANDIS, JACK ANDREWS, NORMAN BANGERTER, TOM CASAULT, CHRIS PARNASS, MARSHALL REDDICK, and DOES 1 through 100, Inclusive


TO DEFENDANTS:

CPP PROPERTIES, LLC, MUIR, LLC, MARSHALL REDDICK REALTY, INC., MARSHALL REDDICK SEMINARS, INC.,COMMERCIAL REAL ESTATE PROPERTIES, LLC, MARSHALL REDDICK COMMERCIAL REAL ESTATE NETWORKS, INC., SEAN DENNISON, MARTIN LANDIS, JACK ANDREWS, NORMAN BANGERTER, TOM CASAULT, CHRIS PARNASS, MARSHALL REDDICK, and DOES 1 through 100, Inclusive

# UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
## CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)
MICHAEL KRONK

**DEFENDANTS**
LANDWIN GROUP, LLC, SYLVIA, INC., SMITHDENNISON CAPITAL, LLC, JACK R. ANDREW AND ASSOCIATES, LLC, NHB FAMILY PARTNERS, LLC, CPP PROPERTIES, LLC, MUIR, LLC, et al.

**(b) Attorneys** (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)

Law Offices of Andrew M. Wyatt
20750 Ventura Boulevard, Suite 440
Woodland Hills, CA 91364    (818) 710-3813

Attorneys (If Known)

---

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff   ☑ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant   ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☑ 1 | ☑ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☑ 4 |
| Citizen of Another State | ☐ 2 | ☑ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☑ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

---

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:   JURY DEMAND:** ☑ Yes  ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☑ Yes  ☐ No   ☑ **MONEY DEMANDED IN COMPLAINT:** $ 13,800,000+

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
VIOLATION OF SECURITIES ACT OF 1933 AND THE SECURITIES EXCHANGE ACT OF 1934 (§§10(B),14(A),20(A)); RICO (18 U.S.C. 1962)

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | | ☐ 380 Other Personal Property Damage | ☐ 530 General | |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Fed. Employers' Liability | **BANKRUPTCY** | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 340 Marine | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | **CIVIL RIGHTS** | **FORFEITURE / PENALTY** | **PROPERTY RIGHTS** |
| ☐ 810 Selective Service | | ☐ 355 Motor Vehicle Product Liability | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 360 Other Personal Injury | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☑ 160 Stockholders' Suits | ☐ 362 Personal Injury- Med Malpractice | ☐ 443 Housing/Acco- mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 365 Personal Injury- Product Liability | ☐ 444 Welfare | | **SOCIAL SECURITY** |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 445 American with Disabilities - Employment | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | | | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | **REAL PROPERTY** | **IMMIGRATION** | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 462 Naturalization Application | | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 463 Habeas Corpus- Alien Detainee | ☐ 440 Other Civil Rights | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determi- nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | ☐ 465 Other Immigration Actions | | | **FEDERAL TAX SUITS** |
| | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

---

SACV10-00242

**FOR OFFICE USE ONLY:**   Case Number: _____

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑ No ☐ Yes
If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**
(Check all boxes that apply)  ☐ A.  Arise from the same or closely related transactions, happenings, or events; or
☐ B.  Call for determination of the same or substantially related or similar questions of law and fact; or
☐ C.  For other reasons would entail substantial duplication of labor if heard by different judges; or
☐ D.  Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐  Check here if the government, its agencies or employees is a named plaintiff.  If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Orange | |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐  Check here if the government, its agencies or employees is a named defendant.  If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles, Orange | Utah |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
**Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles, Orange | |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER): _Andrew M. Wyatt_  Date  3/1/10

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Cormac J. Carney  and the assigned discovery Magistrate Judge is Marc Goldman.

The case number on all documents filed with the Court should read as follows:

## SACV10- 242 CJC (MLGx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=========================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [ ] **Western Division** | [X] **Southern Division** | [ ] **Eastern Division** |
|---|---|---|
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.